JOHN M. PINKERTON, administrator, *vs.* HORACE B. SARGENT executor.

The privilege of a widow, under the St. of 1861, *c.* 164, to waive the provisions made for her in her husband's will, and become thereby entitled to a distributive share of his estate, is a personal right, which, if she is insane, neither she nor her guardian can exercise.

APPEAL by the executor of the will of Lucius M. Sargent from a decree of the judge of probate, directing him to pay to the administrator *de bonis non* of the estate of Sarah C. Sargent ten thousand dollars as the share of the personal estate of the testator to which the said Sarah, his widow, became entitled, before her death, by waiving the provisions made for her in his will; heard by the chief justice, and reserved for the determination of the full court, on agreed facts of which the following is the substance.

Lucius M. Sargent died in June 1867; on the 29th day of that month his will was duly proved and allowed in the probate court for this county; the appellant was appointed executor, assumed that trust, and on July 22, 1869, filed an account stating that there was in his hands personal estate of the testator to the amount of more than thirty thousand dollars, not needed for the payment of debts.

Within six months after the probate of the will, three several waivers of the provisions made in it for Sarah M. Sargent, the estator's widow, were filed in the probate office in writing. The first waiver, filed July 17, 1867, was made in the name of " John M. Pinkerton, as guardian of the said Sarah C. Sargent," and so signed by Pinkerton, who was then, and until the death of Mrs. Sargent, her duly appointed and legal guardian. The second waiver, filed October 8, 1867, was made in the name of Mrs. Sargent " by her guardian aforesaid," and signed " Sarah C. Sargent, by her guardian John M. Pinkerton." The third waiver, filed October 25, 1867, was made by Mrs. Sargent in her own name, and signed by herself in the presence of two witnesses. " It is agreed that the said Sarah C. Sargent had

been for many years before, and was at the times when said waivers were made, a resident of an insane asylum, and was an insane person, and under guardianship as such, and so continued till the time of her death, August 7, 1868."

The decree, from which the appeal was taken, was made after the death of Mrs. Sargent, and founded on these waivers and the executor's account above named.

" On the foregoing statement of facts, it is hereby agreed by the parties hereto, that if, in the opinion of the court, said waivers, or any one of them, were good and sufficient in law, to set aside the provisions of said will, made in behalf of the widow, so that she became entitled to the share in the estate of her deceased husband allowed her in such case by statute, then the decree aforesaid of said judge of probate is to stand, otherwise it is to be set aside and reversed, or such other decree may be made in the case as in the judgment of the court justice may require."

*J. M. Pinkerton, pro se.* 1. The waiver by the guardian was good. The authority for such an act is inherent, from necessity, in the office of guardian; there being otherwise, in case of insanity, no sound mind to determine a question of the greatest importance to the ward. *Manson* v. *Felton*, 13 Pick. 206. *Hicks* v. *Chapman*, 10 Allen, 463. The power given by statute to the guardian of an insane person also authorizes the guardian to make the waiver. Gen. Sts. *c.* 109, § 12. This statute gives him "the management of all the estate" of the ward. Her whole estate, in the present case, consisted in the right of waiving the provisions of the will and claiming her distributive share 'n her husband's estate; otherwise, she had no property for her guardian to manage. Of this right, then, as her only estate, he had the control under the statute. To the argument that the right of waiver by a widow is a personal one, which, for personal reasons and motives, she, if sane, might exercise in a manner different from that of the guardian, and so the guardian might not exercise it truly for her, the reply is, that it is no more personal than many others which the law allows a guardian to exercise, such as the determination of a tenancy at will, or the

acknowledgment of a debt of the ward so as to take it out of the statute of limitations. The humanity of the law, which peculiarly guards the imbecile, will not suffer her insanity, which is a visitation of God, to deprive a widow of a valuable legal right.

2. But, aside from the waiver of the guardian, that of the ward was good. It is true that it is agreed that she was insane; but how much so does not appear. Where there is no other evidence shown than the doing of a reasonable act, that will be of itself a presumption of some reason; and if there be a spark of reason indicated by the act, the court will be quick to note the fact. The slightest sign of intelligence, in exercising a right eminently prudent to be so exercised, will be enough for the court. This widow did not die without making such a sign, and leaving it on record. This view is fully sustained by the case of *Brown* v. *Hodgdon,* 31 Maine, 65. The contracts of insane persons are not void but voidable, and may be ratified by them in lucid intervals. *Allis* v. *Billings,* 6 Met. 415. There is no reason why such contracts, being only voidable, should not also be ratified by guardians; nor why the same doctrine should not be true also of waivers.

*H. W. Paine & R. D. Smith,* for the appellant.

COLT, J. The power of testamentary disposition, which is given to all persons of sound mind and full age, is controlled, to a limited extent, by the privilege which the testator's widow has of waiving the provisions of the will in her behalf and taking instead her distributive share of his estate. Gen. Sts. *c.* 92, § 24. St. 1861, *c.* 164.

This privilege of waiver is a purely personal right, and its exercise rests in her personal discretion alone. It is not a question of mere pecuniary advantage. The widow's knowledge of the family arrangement, the wishes of her husband, equitable considerations known and appreciated only by her, may all have weight and influence in determining her election. It is a privilege which cannot be regarded as a portion of her estate.

There is nothing in the statutes which discloses any purpose to impair the right to dispose of property by will, any further than

the exercise of the right by the widow in her sane mind may do it. It is not to be inferred, without express provision, that when, through loss of reason, the waiver can no longer be intelligently made by the widow, a stranger, who may be appointed guardian, may do it in her name, or in his own name as guardian.

It has been already decided that, where the widow died a few days after the decease of her husband, and before the probate of the will, her administrator and the children by her former husband could not exercise the right of waiver, which it was said was personal to her, and could not pass to her representatives. *Sherman* v. *Newton*, 6 Gray, 307. And it has been more recently held that the waiver was sufficient, if made by a widow who died before the probate of the will. *Atherton* v. *Corliss*, 101 Mass. 40.

It is not necessary to decide whether a waiver in form, made by an insane person, is such an act as can be made effectual by a subsequent ratification after sanity is restored. If so, it would seem that the ratification must occur before the lapse of the time limited by the statute. It cannot be made valid by the subsequent act or approval of the guardian alone. This would be practically to confer the right upon the guardian. The case cited of *Brown* v. *Hodgdon*, 31 Maine, 65, seems to hold that, if an insane widow waives the provisions of the will, and at no lucid interval evinces a disposition to avoid the waiver, which is confirmed by her guardian, it cannot be objected that it is inoperative. The waiver in that case was made before the appointment of a guardian; and the case assumes that there was a ratification of the act by the widow during lucid intervals. Here it is agreed that Mrs. Sargent had been for many years before and was at the time when the several waivers were made an inmate of an insane asylum, under guardianship as an insane person, and so continued until her death. *Allis* v. *Billings*, 6 Met. 415.                                *Decree reversed.*