FREDERICK W. G. MAY *vs.* SARAH E. SKINNER & another.

Middlesex. March 26, 27, 1889. — June 19, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Probate Appeal — Guardian and Ward — Executor — Allowance for Services.*

If a decree of the Probate Court, upon a guardian's petition on the Pub. Sts. c. 139, § 38, for leave to expend money to build a stable for his ward, grants such leave, and sets a limit to such expenditure, which the guardian exceeds, such limit merely defines the authority conferred, and the guardian is not precluded from justifying his action by proof that the excess of expenditure was proper.

A charge by such guardian in his account, for superintending the building of the stable, was *held* to be rightly disallowed.

An executor in his account made a charge of one per cent for transferring personal property to a special administrator, pending a controversy over the probate of the will, and an additional charge for computing what was due under a special legacy of bonds to a legatee. *Held*, that one half of one per cent should be allowed for such transfer, and that the charge for the computation was rightly disallowed.

THREE APPEALS by Frederick W. G. May, guardian and executor of the will of Frederick May, an insane person, from decrees of the Probate Court disallowing certain items of his accounts. The appellees, Sarah E. Skinner and Kate L. White, were legatees under the will. The cases were separately referred to the same master, whose several reports, so far as material, were as follows.

The items disallowed were $8,381.36, the excess above a limited amount allowed by the Probate Court for the building of a stable for the ward; $500 for services of the guardian in superintending the building of such stable; $94.67, being one half of a commission of one per cent charged by him for transferring certain personal property of the ward to a special administrator appointed pending a controversy over the probate of the will; and $150 for computing the amount of a specific legacy due Sarah E. Skinner under the will.

The appellant, as guardian, filed a petition in the Probate Court for leave to build a stable for his ward on a lot in Medford, which had been bought for his homestead, and on which a convenient and valuable house had been built for him, which he occupied until his death.

The petition alleged " that his ward is desirous of having built on his estate at Medford, where he resides, a stable of greater capacity and more in keeping with the house and surroundings of the place than the one now there, which is small and of an inferior character; that much of said ward's enjoyment is derived from his horses, their comfortable keeping, and the careful housing of his vehicles and stable furniture "; and prayed for authority " to build on said estate a stable suited to the tastes, wishes, fortune, and station of his ward, and for that purpose to sell and transfer so much of the stocks and personal property of his estate as should be necessary." On this petition the judge of probate entered a decree " that the prayer of said petition be granted, and said guardian is hereby authorized to erect a stable on said estate at an expense not exceeding ten thousand dollars, and to sell and transfer personal estate of his ward to defray the expenses of building such stable." From this decree an appeal was taken to this court, which affirmed the decree upon the grounds stated in the report of the case, *May v. May*, 109 Mass. 252.

The guardian began to build the stable soon after the decree was affirmed, having procured plans for the same with which the ward was much pleased, and according to which a room was to be included in the stable for a man. When the work of building the stable was commenced, it was soon found that it was reasonable and convenient in the development of the work

to make some changes in the proposed structure and the inside
arrangement thereof from those which were first proposed or
suggested, and to enlarge the area which the building was to
cover by constructing under the same roof, and as part of the
stable, a small tenement sufficient for the occupancy of a man
to care for it and his family, so that the ward might not be re-
quired to have them in his own dwelling-house, and this was
done.    When finished, the whole stable, which was built by the
day, including the internal conveniences and tenement in the
same, cost $18,381.36.    The master took a view of the ward's
house, the stable, and the lot of land upon which they were built.
The guardian was the only witness examined before the master,
and testified that he had paid the sums charged in his accounts
for building the stable, and that in his opinion the sums paid
were reasonable.    There was no other evidence adduced by either
party in regard to the reasonableness of the expenditure.

The master found that the changes made in the stable and
the time and manner of constructing it were reasonable, and
were approved of by the ward, who took great interest in the
enjoyment of his stable, horses, and carriages, and that the
stable was built in accordance with his tastes and wishes ; that
it was important to the health and comfort of the ward that
there should be no further delay in building the stable, and
that the delay from the time of filing the original petition until
the final decree had vexed and worried him, and that it was rea-
sonable and proper for the guardian to build at once ; that the
stable was built with reasonable expense and cost, and that it
was reasonable and useful to the ward to expend a larger and
reasonable sum in addition to the limited sum of ten thousand
dollars, and that the whole amount spent in building the stable,
including such increase, considering the means, conditions, wants,
wishes, and tastes of the ward, was reasonable and useful to the
ward, and was expended in a suitable, proper, and reasonable
manner.    The stable when completed was used and enjoyed by
him to the time of his death, on September 13, 1875, a consider-
able time after the stable was built.    The master submitted to
the court whether the appellant should be allowed the $8,381.36,
or any part thereof, money expended by him in erecting the
stable over and above the said sum of ten thousand dollars.

The appellant as guardian charged $750 for superintending the construction of the stable, and of this charge the Probate Court disallowed $500, which amount the master also disallowed. The stable was constructed only under the superintendence of the appellant, who visited the stable two or three times a week during its construction, which occupied nearly a year, and gave proper superintendence of the work. The guardian was not an architect or builder, and there was no evidence that he had had any previous experience in building, except that he testified that he had once had a stable built himself, and that he had had extensive alterations made in the ward's house in Medford. He was in the habit of visiting the ward and dining with him at his house about three times a week, and it was on these occasions that he made his visits to the stable. The guardian charged the sum of one hundred dollars per month, including the whole of September, 1875, for personal services, care, and attendance upon the ward, which was allowed him, as well as a commission of five per cent on income received by him. The master submitted to the court whether the guardian should be allowed his whole claim for his services in superintendence of the building of the stable, and if not, what portion, if any, thereof should be allowed him.

The appellant as executor charged the sum of $189.35, being a commission of one per cent on the amount of personal property transferred to a special administrator who was appointed on account of a controversy concerning the probate of the ward's will, which was finally proved, and letters testamentary granted to the appellant as the executor thereof, in 1879. The judge of probate allowed the sum of $94.68, being one half of one per cent, and disallowed $94.67, which the master also disallowed, and submitted the question to the court whether one per cent or one half of one per cent should be allowed him as his commission.

The appellant as executor charged one hundred and fifty dollars for time and labor in computing the amount due Miss Skinner under the thirty-third clause of the will of the testator, the material part of which was as follows: " I give. and bequeath to the said Sarah Elizabeth Skinner . . . my gold-bearing registered United States bonds, with the proceeds of their interest, now in my tin trunk, amounting now to about $2,000,

and whatever the same may amount to by accumulation of interest, and into whatever securities the same may be at the time of my decease."

The master found that the service was actually rendered, and that the computation was a difficult one; that at the time when the will was made, on July 14, 1870, the testator had two thousand dollars in United States gold-bearing six per cent bonds, the income of which was regularly paid to him in gold, which, with other money which came to him, he subsequently invested; that between the date of the will and that of his death some of the bonds were redeemed by the United States, and the proceeds thereof were deposited with a trust company on interest payable semiannually; that at the time of his death he had forty-five hundred dollars in United States bonds; that the necessary computation extended over a period of about ten years; and that the appellant for his services as executor made a general charge of five per cent on income, and of two and a half per cent on capital, amounting together, in both accounts, to $5,097.85, which, with some charges for special services, was allowed. The master disallowed the charge in question, because he did not think that the service of computation was such a special service as to be a subject of special compensation, and submitted to the court the question whether, upon these facts, the charge of one hundred and fifty dollars, or any part thereof, ought to be allowed.

Hearing upon the master's reports, and exceptions of both parties thereto, before *W. Allen*, J., who ordered that the three appeals be consolidated under the St. of 1888, c. 290, § 5, and reserved the case for the consideration of the full court.

*Samuel Hoar*, for the appellant.

*J. L. Thorndike*, for the appellees.

HOLMES, J. These are appeals from decrees of the Probate Court upon accounts of the appellant as guardian and executor of an insane person. The guardian was authorized by the Probate Court, and by this court on appeal, to build a stable for his ward at an expense not exceeding ten thousand dollars. *May v. May*, 109 Mass. 252. The stable was built, and cost $18,381.36. The main question is, whether the guardian should be allowed $8,381.36, the excess over the limit set in the decree.

The master reports, that, when the work of building was begun, it was found convenient to make some changes in the proposed structure; that the changes made were reasonable, and were approved by the ward; that it was important for the health of the ward to build at once, that is, as we understand it, without the delay of a further application to the court; that the stable was built at a reasonable cost; and that the additional expenditure was reasonable and useful to the ward. The master took a view of the premises, and heard the testimony of the guardian. We cannot say that his findings were not warranted by the evidence; and upon those findings, but for the decree, there can be no doubt that the guardian would be allowed the whole amount expended. *Kendall* v. *May,* 10 Allen, 59. *May* v. *May,* 109 Mass. 252. *Killpatrick's appeal,* 113 Penn. St. 46.

We are of opinion that the limit of ten thousand dollars set in the decree did not import a prohibition to exceed it, but only marked the extent of the authority conferred. The proceeding was a proceeding to obtain authority to sell personal estate and invest it in the stable, under the Gen. Sts. c. 109, § 22 (Pub. Sts. c. 139, § 38). The decree was a grant of authority, in pursuance of the prayer of the petition. If the guardian went beyond the authority granted, he did so at his peril, and was bound to justify his expenditure or to make it good. But it seems to us that it would be needlessly harsh to say that the decree excluded him from proving a justification which otherwise would have been open to him.

We see no sufficient reason for differing from the conclusion of both the probate judge and the master, that five hundred dollars of the charge made by the guardian for superintendence should be disallowed; that only one half of one per cent on the amount transferred to the special administrator should be allowed, and that no additional compensation should be given for computing what was due under a specific legacy of bonds to Miss Skinner. *Urann* v. *Coates,* 117 Mass. 41, 44. *Dixon* v. *Homer,* 2 Met. 420, 423. *Turnbull* v. *Pomeroy,* 140 Mass. 117, 118.

*Decree accordingly.*