GOULD ANTHONY, executor, *vs.* BENJAMIN P. ANTHONY & others.

Bristol.　　March 13, 1894. — May 17, 1894.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Real Action — Foreclosure of Mortgage — Payment — Adverse Possession — Evidence — Declaration of Parties — Statute of Limitations.*

The statute of limitations is not a bar to a writ of entry to foreclose a mortgage brought by a mortgagee against a mortgagor, unless it appears that the mort-

gagee was disseised by the mortgagor twenty years or more before the action was brought.

At the trial of a writ of entry to foreclose a mortgage brought by a mortgagee against a mortgagor, in which the defences relied on were adverse possession of the premises maintained for more than twenty years prior to the commencement of the action, and payment or satisfaction of the mortgage debt, it appeared that the mortgage was executed in 1860; that the mortgagee, who was a resident of Rhode Island, died in 1870, and that his will was there admitted to probate in 1871, the demandant being appointed one of the executors; that in March, 1892, the will was admitted to probate in Massachusetts, and the demandant was appointed executor here, and in June, 1892, brought the writ of entry to foreclose the mortgage; and that in 1878 a third person, acting under a power of attorney from the executors appointed in Rhode Island, made an open and peaceable entry upon the mortgaged premises, in the presence of two witnesses, for the purpose of foreclosing the mortgage, and caused a certificate to be made and recorded in accordance with the statute, and on the same occasion had an interview with the widow and daughter of the mortgagor, who were then living on the premises, at which time a lease of the property for one year, running from the executors of the mortgagee to the widow of the mortgagor, signed for the lessee by the hand of her daughter, one of the tenants in the action, was executed, and afterwards held by the executors, and at the same time the widow and daughter of the mortgagor were told that the executors were taking proceedings to foreclose the mortgage. *Held*, that evidence of the action of the executors was competent on the question whether the tenants had been in adverse possession of the property for twenty years prior to the beginning of the action, and on the question whether there should be a presumption of payment of the mortgage from lapse of time. *Held, also*, that declarations and admissions of the widow of the mortgagor, who after his death was an owner of an interest in the mortgaged premises, and continued in the occupation of them until her death, tending to show the nature of her occupation, were competent to be considered in connection with her conduct in remaining there upon the question whether there should be a presumption of payment of the mortgage, and whether her possession was adverse to the mortgagee.

WRIT OF ENTRY, dated June 18, 1892, to foreclose a mortgage of a parcel of land in the town of Dartmouth, brought by the executor of the will of Jonathan Anthony, the mortgagee, against the heirs at law of the mortgagor, Reuben Anthony. Pleas as to all the tenants, *nul disseisin*, and that on April 6, 1860, the mortgagee purchased the demanded premises for the mortgagor, who was his son, and at the same time induced his son to execute to him a mortgage thereof; that the demanded premises were purchased on the understanding and agreement that the son was to accept and receive them as his full portion of his father's estate; that the mortgage was not given or received as security for a debt, or for money paid or loaned by the mortgagee to the mortgagor, but was given on the express under-

standing that the mortgagor was not to be called upon to pay it, but that it was shortly to be cancelled and discharged, and that no payment had ever been made upon the principal or interest thereof.

One of the tenants, Benjamin P. Anthony, further alleged that the title and possession of the demanded premises had been in himself as the heir at law of Reuben Anthony by open, peaceable, and adverse possession for a period of more than thirty years prior to the commencement of the action.

By an amendment to their answer the tenants further alleged that if anything ever was due upon the mortgage the same had been paid.

Trial in the Superior Court, without a jury, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The demandant introduced evidence of the execution of a mortgage of the demanded premises, on April 6, 1860, by Reuben Anthony to his father, Jonathan Anthony, the demandant's testator, for $1,600.

For the tenants, one Thomas Innman testified that Jonathan Anthony was the father of Reuben, Gould, Joseph, Martha, and Galloupe Anthony ; that Reuben bought the demanded premises, which was a farm, in 1860; that thereafter the witness, who had lived on the farm himself, had several conversations with Jonathan Anthony about it, in the first of which Jonathan asked him if he thought Reuben could get a living there and support his family, to which the witness replied that he did not see how he could do it if he had to pay $90 or $100 interest, and that Jonathan then said that he did not intend that the mortgage should ever trouble Reuben ; and that it was put on the farm to prevent him from making away with it. In a later interview, the mortgagee said that the note or mortgage would never be collected ; that the farm belonged to Reuben and his family ; and that the mortgage was put on as a safeguard.

Martha A. Albro, a sister of the mortgagor and the daughter of the mortgagee, testified that her father said he would give Reuben the place if he would sign off that he had got his part ; and, in response to her inquiry of him as to why he took a mortgage from her brother, he said that he had not intended to take any mortgage, but that Gould and Joseph thought that he had

better do so, as Reuben once in a while would drink too much; and that then, and once or twice later, her father said that he should give the mortgage back.

Edmund Mosher testified that he was the husband of a daughter of Reuben Anthony, and that, in a conversation in 1865 with Jonathan Anthony regarding the mortgage, the latter said he had bought a farm in Dartmouth for Reuben and his children, and he meant them to have it; that Gould and Joseph thought that he had better take a mortgage on it, but that, as he put it on as a safeguard, he was going to take it off; and that after Reuben's death his son Benjamin P. Anthony had run the farm, and his mother, Reuben's widow, had lived with him there until her death. On cross-examination he testified that he did not know that Mary Ann Anthony, the widow of Reuben, ever had a lease, and that he was not present when she signed a lease, and did not remember whether he signed the lease as a witness, and was uncertain as to whether he was present on any of the occasions when William Barker visited the farm.

Abby F. Mosher, a daughter of Reuben Anthony, testified that she heard conversations between her father and grandfather regarding the mortgage, the first of which was about a year after her father had gone to live on the farm; and that her father asked her grandfather to give him up that mortgage, to which her grandfather replied, " I will, Reuben; I bought the farm for you for your lifetime, and for your children to have it after you." Substantially similar statements were afterward made by the mortgagee in the hearing of the witness, who never heard her father or grandfather say anything about paying the mortgage; that, after the death of her father, her brother Benjamin managed the farm; and that her mother did nothing more than keep house for her brother, who supported her. On cross-examination, the witness testified that all of the foregoing conversations took place within two years after the purchase of the farm.

Benjamin P. Anthony, a son of Reuben Anthony, and one of the tenants, testified that in 1860 his grandfather was talking of buying a farm for his father, and that after their return from an examination of the farm in question, which they had heard was for sale, he heard his father say to his grandfather, " Father,

if you will buy me that place and give it to me free and clear, a warranty deed of it, I will sign off from your property, but I had n't ought to. It is nothing like the rest will have." Two or three weeks later his grandfather bought the farm, and said, " Well, Reuben, I have taken you up at your offer; I have bought the place, and you can move into it as quick as you mind to."

The witness further testified, that afterward, when his father was living upon the farm, his grandfather occasionally came there, and that several times, when asked by his father to give up the mortgage, his grandfather said that he meant him to have the place ; that he did not take the mortgage for any gain of his own, but for his son to have it for his lifetime, and for his children afterward ; that his grandfather never asked for any interest or the principal on the mortgage ; that after the death of Reuben, on October 29, 1872, the witness carried on the farm himself, paid the taxes, cut the wood and sold it, repaired the buildings, and built a barn ; that since the death of his father no one had asked him for principal or interest on the mortgage, and he had never paid any ; and that his mother did nothing more about the farm than the general housework.

On cross-examination the witness admitted that he had received a letter from Gould Anthony forbidding him to cut wood on the farm, to which he had paid no attention ; that William Barker came to the farm about three years before the trial, and said that Gould Anthony and Robert wanted to know if the witness desired to buy the place, to which he replied that he considered that he owned it; that he was positive that his mother, Mary Ann Anthony, never gave a lease of the place ; that there was no arrangement by which he was to stay there and keep the buildings in repair and pay the taxes in lieu of rent, but that since the death of his father he had run the place, and considered it as their own.

In rebuttal, the demandant testified that he was the son of Jonathan Anthony and co-executor with Joseph Anthony of his will ; that his father died on December 18, 1870 ; that in 1878 the witness, with his brother Joseph, as executors, gave a power of attorney to William Barker, who foreclosed the mortgage, and gave a lease of the demanded premises to Mary Ann Anthony,

the widow of Reuben, who died in 1872; that he wrote letters to his nephew, Benjamin P. Anthony, one of the tenants, forbidding him from thereafter cutting or selling wood, and stating to him that he thought that, if he, Benjamin, would pay to another nephew of the demandant, Robert W. Anthony, a certain amount of rent, the latter would not sell the place; and that Benjamin and his mother could have the witness's part of the place rent free.

On cross-examination, he testified that he had no directions from his father regarding the mortgage, and that his father never directed him not to foreclose, or to give the mortgage up and cancel it.

William Barker testified, that on December 13, 1878, he went to Reuben Anthony's place for Gould and Joseph Anthony, for the purpose of entering to foreclose the mortgage, and with a view of leasing the farm, and at that time he went to the house and saw Benjamin Anthony and Mrs. Anthony, and the conversation between them was, in substance, that Gould and Joseph Anthony desired that something should be done by way of asserting their claim, and proposing to lease the premises to the widow of Reuben Anthony.

On cross-examination, he testified that he read the lease to Mary Ann Anthony, but that he was not certain that she signed her name to it; that he thought she gave directions to her daughter to sign it for her; that he could not say whether she said she would not sign the lease, or whether he let Mrs. Mosher, her daughter, read it before signing her mother's name; that he could not tell whether Mrs. Mosher knew what she was signing her mother's name to or not, unless she was present when it was read, and he did not remember whether she was or not; that he thought Benjamin Anthony was present when the lease was signed, although he was not certain; that at the time of taking the lease no claim was made by Mrs. Anthony or Benjamin that they owned the farm; and that no claim had ever been made by Benjamin or any of the other heirs, or by the widow of Reuben, adverse to the claim of the executors, except that within the two years prior to the trial Benjamin had claimed that the farm belonged to him.

Jonathan A. Sisson, a grandson of Jonathan Anthony, the

mortgagee, testified that, in March, 1867, he heard Reuben ask the mortgagee if he would give him up the note and mortgage, to which the mortgagee answered, " No, I shall not, unless you pay it, which I don't think you ever will, — you know you were not to have but two thousand dollars," and Reuben replied, " I know it "; that the mortgagee then added, " You know I gave more for the farm than I intended to "; and that in May, 1867, the mortgagee asked the mortgagor if he could pay him any money on the mortgage, and the mortgagor said, " No, for I have n't got it."

Phœbe Goddard testified that, in a conversation between Mary Ann Anthony and Joseph Anthony, twelve or thirteen years before the trial, the former said that her son had the hay all cut and stacked, but that the barn leaked so badly that it was unfit to put the hay in, and that he did not want to go to the expense of repairing unless he could stay there through the winter ; and that Joseph told her to tell Benjamin to repair the barn and put in his hay, and he would make it all right with Gould.

Jane H. Sisson testified that Mary Ann Anthony came to her house in Portsmouth, Rhode Island, in 1881, and said that she had come to have an understanding with Joseph Anthony in regard to the farm she then occupied, and asked her if she knew what they were going to do about foreclosing the mortgage ; that after her return from an interview with Joseph, in response to an inquiry as to what conditions had been agreed on, she replied that she was not to be disturbed during her life, provided the taxes were paid, and the place was kept in decent repair.

Sarah A. Anthony testified that about fourteen or fifteen years before the trial she heard a conversation between Mary Ann Anthony and Joseph Anthony, at the house of the latter in Portsmouth, Rhode Island, in which she said that she would fix the barn if she and her son could stay there longer, but did not want to put out any money if they could not ; and that he told her that they could stay there if they would pay the taxes, and would cut only wood enough to burn, and sell none, and do what was right by the place.

Abbie F. Mosher, who signed the lease in behalf of Mary Ann Anthony, being recalled, testified that, in reply to her inquiry as to what the paper was which William Barker desired her

to sign, he said: " It is to show we are about to foreclose the mortgage, and that I have notified your mother ; she knows it, and you need not stop to read it." She further testified, that her brother Benjamin P. Anthony was not present at her house when the lease was signed by her.

Benjamin P. Anthony, recalled, testified that he never was present when Barker produced a paper, and asked his mother to sign it. This was all the material evidence in the case.

It was admitted at the trial that the will of Jonathan Anthony, who at the time of his death was a resident of Portsmouth, Rhode Island, was, on March 4, 1892, admitted to probate in Massachusetts, and Gould Anthony, the demandant, was appointed the executor thereof.

· The judge found for the demandant; and the tenants alleged exceptions.

*E. Avery*, (*T. F. Desmond* with him,) for the tenants.

*W. M. Butler*, for the demandant.

KNOWLTON, J. This is a writ of entry to foreclose a mortgage, tried before a justice of the Superior Court without a jury. The tenants excepted to the refusal of the court to rule that there was no evidence to warrant a finding for the demandant, and to certain rulings in regard to the admission of evidence. The defences principally relied upon were the statute of limitations, adverse possession of the premises maintained for more than twenty years prior to the commencement of the suit, and payment or satisfaction of the mortgage debt. The statute of limitations was not pleaded, and this fact alone might be a sufficient answer to the tenants' claim under it at the trial. Moreover, this statute is not a bar to a writ of entry brought by a mortgagee against a mortgagor, unless it appears that the mortgagee was disseised by the mortgagor twenty years or more before the action was brought. *Bacon* v. *McIntire*, 8 Met. 87.

The lapse of time since the mortgage debt became due was such as to furnish a presumption of payment had there been no explanation of it. *Kellogg* v. *Dickinson*, 147 Mass. 432, 437. But the evidence showed very clearly that the debt had not been paid. Indeed, the tenant contended that the mortgagee never intended to exact payment, nor to have the mortgage enforced. There was also evidence to justify the court in find-

ing that the mortgage was never satisfied otherwise than by payment. This finding of fact we cannot revise, and the correctness of it we have no occasion to question.

On the question whether there was a disseisin and an adverse use by the mortgagor and those claiming under him, continued for twenty years, there was ample evidence to warrant the finding against the tenants. See *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, 548.

Jonathan Anthony, the mortgagee, a resident of Portsmouth, Rhode Island, died on December 17, 1870 ; his will was admitted to probate there on February 13, 1871, and Gould Anthony, the demandant, and Joseph Anthony, were appointed executors. On March 4, 1892, the will was proved in Massachusetts, and the demandant was appointed executor here. On December 13, 1878, one William Barker, acting under a power of attorney for the executors appointed in Rhode Island, made an open and peaceable entry upon the mortgaged premises, in the presence of two witnesses, for the purpose of foreclosing the mortgage, and caused a certificate to be made and recorded in accordance with the statute, and on the same occasion had an interview with the widow and a daughter of the mortgagor, who were then living on the premises. There was some conflict of evidence as to what occurred at this interview, and as to whether the tenant, Benjamin P. Anthony, was present. But there was evidence that a lease of the property for one year, running from the executors to Mary Ann Anthony, the widow of the mortgagor, signed for the lessee by the hand of her daughter, one of the tenants in this action, was then executed, and afterwards held by the executors. There was testimony that the widow and daughter of the mortgagor were told at that time that the executors were taking proceedings to foreclose the mortgage. The tenants objected, and excepted to the admission of evidence of the proceedings in this attempt to foreclose.

It is clear that executors appointed in another State cannot foreclose a mortgage in Massachusetts, and it is equally clear that, by their appointment in the place of the testator's domicile, they acquire such a title to his personal property everywhere that they can properly receive and collect it, or take measures for the care and preservation of it, and take it to the place of

their appointment, so far as this can be done without the aid of legal proceedings, if their action does not interfere with the rights of local creditors where the property is found. *Cutter* v. *Davenport,* 1 Pick. 82, 85. *Hutchins* v. *State Bank,* 12 Met. 421, 424. We are of opinion that the action of the executors was competent evidence on the question whether there should be a presumption of payment of the mortgage from lapse of time, and on the question whether the tenants had been in adverse possession of the property for twenty years prior to the bringing of this suit.

The only other exception which was argued was to the introduction of conversations and admissions of Mary Ann Anthony. She was the widow of the mortgagor, and after his death was an owner of an interest in the mortgaged real estate. There was evidence tending to show that she continued in the actual occupation of the estate so long as she lived. The natural inference from the facts shown is, that her occupation, except as it was affected by the lease from the executors in Rhode Island, was under the provisions of Pub. Sts. c. 124, § 13, which permitted her to occupy with the rights of a tenant in common so long as there was no objection on the part of the heirs. It was contended by the tenants that this occupation was adverse to the demandant. Under these circumstances, her declarations which tended to show the nature of her occupation were competent to be considered, in connection with her conduct in remaining there, upon the question whether there should be a presumption of payment of the mortgage, and whether her possession was adverse to the mortgagee.

*Exceptions overruled.*