EDWARD C. GARDINER *vs.* S. LOTHROP THORNDIKE
& another, executors.

Suffolk.   November 14, 1902. — February 27, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Guardian. Executor.*

A voluntary payment of a legacy by an executor to the guardian of the legatee appointed in another State, by the law of which he is authorized to receive it, is valid. Pub. Sts. c. 139, §§ 39, 40, giving the executor in such a case the right to apply for an order of the Probate Court, does not change the common law if the executor chooses to make a voluntary payment without resorting to the statute.

CONTRACT against the executors under the will of Caroline Louisa Gardiner for a legacy of $1,000. Writ dated May 11, 1900.

The defence was payment. At the trial in the Superior Court before *Sherman*, J., without a jury, it appeared, that the defend-

ants had paid the amount of the legacy to the guardian of the plaintiff appointed in the State of Maine and authorized by the laws of that State to receive the payment. The judge found for the defendants, and reported the case for determination by this court. If the rulings made by the judge were correct judgment was to be entered for the defendants; otherwise, such judgment was to be entered as this court might think proper.

The case was argued at the bar in November, 1902, before *Knowlton, Morton, Lathrop, & Hammond,* JJ., and afterwards was submitted on briefs to all the justices.

*H. P. Harriman & J. F. Neal,* for the plaintiff.

*W. W. Vaughan,* (*H. G. Vaughan* with him,) for the defendants.

HAMMOND, J. The defendants paid the legacy to the guardian, the father of the plaintiff, both guardian and ward being at the time of the payment domiciled in Maine, where the appointment was made ; and the crucial question is whether the payment is a bar to this suit.

It is well settled that at common law the authority of a guardian, like that of an administrator, is local and is restricted to the limits of the State in which he is appointed. This is only one illustration of the general principle that power is the source of jurisdiction, and that the fiat of the law-making power cannot *proprio vigore* extend beyond the power to enforce obedience. It follows that a guardian has no standing in the courts of any other State than that in which he is appointed. If he has occasion to resort to the courts of any State, he must first be appointed a guardian there. The same disability to sue arises in the case of an administrator or executor, and for the same reasons.

It is also well settled that if an administrator or executor can collect in a State other than that of his appointment the goods or credits of the deceased, by the voluntary act of the bailee or debtor, and without resort to the courts, he may properly do so ; and for reasons of comity such acts are regarded as valid to protect the parties. *Williams* v. *Storrs,* 6 Johns. Ch. 353, 357. *Wilkins* v. *Ellett,* 9 Wall. 740 ; *S. C.* 108 U. S. 256. *Wyman* v. *Halstead,* 109 U. S. 654, 656. *Hutchins* v. *State Bank,* 12 Met. 421, 425. *Martin* v. *Gage,* 147 Mass. 204. See also *Frothingham* v. *Shaw,* 175 Mass. 59, 63.

As was well said by Denio, J. in *Parsons* v. *Lyman,* 20 N. Y. 103 : " If residents of this State have in their possession property which belongs to a party domiciled abroad, or are indebted to him, they may of course recognize any valid title claimed under him, arising out of an act *in pais,* by testament or by succession under intestacy, and may voluntarily deliver over the property or make payment of the debt. Our jurisdiction is not violated nor our tribunals in any respect contemned by such a transaction. Simply, our laws are not invoked because in the case supposed there is no occasion for their agency. If the property or money is thereupon taken by the new possessor into the foreign jurisdiction we have no further concern with the matter. If the claimant whose demands have thus been conceded, is himself a trustee for others, as in the case of an executor or administrator, he is subject to the same legal pursuit by the parties whom he represents, or who are interested in the trust, as though he had received the assets at the domicil of the former owner. The fact that those assets were at one time within our jurisdiction, or had existed in the shape of a debt owing by a resident of this State, is of no legal consequence."

Such is the law with reference to voluntary payments made to a foreign administrator or executor, and we see no reason why it should not be the same with reference to such payments made to a foreign guardian, if by the law of the State from which he derives his appointment he is authorized to receive them.

It is not denied by the plaintiff that the guardian, by the law of Maine, was entitled to the possession of the personal property of the ward. It was the duty of the guardian to collect whatever was due to the ward, and take care of it. He was the general domiciliary guardian. Suppose the legacy had been a specific bequest of a horse or any other chattel, and that the same had been within the State of Maine ; and in the presence of the defendants, or by their direction, the article had been delivered to and received by the guardian as the ward's legacy. By what principle of law could it be said that such an act did not pass the title to the ward and the right of possession to the guardian. To hold such a delivery to the general domiciliary guardian as invalid upon the ground that his authority is not

broad enough to take it seems utterly untenable. Suppose the legacy be a certain sum of money and the payment made in Maine, can the rules of law applicable be any different? We apprehend not. Such a payment is made to the person to whom by the law of the domicil of the ward it should be made. And this is so irrespective of the sufficiency of the guardian's official bond. Whether the bond be sufficient or not is not the business of the debtor.

It does not seem to us material whether the property be delivered to the guardian in Maine, or, as was actually the case here, to his agent in this State to be transmitted to him in Maine. In either event, the ultimate result is the same; the property passes into the hands of the domiciliary guardian, who, by the law of the domicil of both the guardian and ward, is competent to receive it, and who, under the law, is responsible therefor to the ward. The language of Denio, J., above quoted, is peculiarly applicable to such an act. Our attention has been called to no case, nor are we aware of any, where a voluntary payment made to a foreign guardian like this one has been declared invalid, except where forbidden by some statute of the State where the payment was made. Under the common law we think that, as in the case of an administrator or executor so in the case of a guardian, a voluntary payment to the foreign representative or his authorized agent is good and will discharge the debtor *pro tanto*. *Ferneau* v. *Whitford*, 39 Mo. App. 311. See also *Wuesthoff* v. *Germania Ins. Co.* 107 N. Y. 580, 591.

It is urged however by the plaintiff that, even if that be so in the case of a private debtor, the principle is not applicable to this case; that the defendants owed the plaintiff not as individuals but in their representative capacity as executors; that as such they were trustees of the plaintiff to the extent of the legacy, were responsible to the court by which they were appointed, for the proper disposition of it, and could pay it over only in accordance with the provisions of Pub. Sts. c. 139, §§ 39, 40. Section 39 provides in substance that a guardian appointed in this State of a ward resident of or removing to another State, may pay over the proceeds of real estate or the whole or any part of the personal estate of the ward to a foreign representative " upon such terms and in such manner as the Probate Court

for any county in which any such real or personal estate is found may decree upon petition filed therefor, and after notice given to all parties interested." Section 40 is as follows: "When a person resides out of the Commonwealth and has no guardian appointed within the Commonwealth, and has personal estate in the hands of an administrator, executor, or trustee in the Commonwealth, such administrator, executor, or trustee may pay over and transfer the whole or any part of such personal estate to a guardian, trustee, or committee appointed by competent authority in the State or country within which such person resides, upon the same terms and in the same manner as mentioned in the preceding section."

Prior to 1858, the manner in which an administrator or executor could pay to a foreign minor the sum due from the estate to him as heir or legatee seems to have been left to the principles of the common law, but in that year the line of legislation was begun which has finally resulted in the statutes above named. St. 1858, c. 117, afterwards substantially re-enacted in Gen. Sts. c. 109, § 23, provided that, when a person under guardianship removed from this State, the guardian appointed in this State might transfer the property of the ward to any foreign guardian or trustee, upon such terms and in such manner as the Supreme Judicial Court should order. It will be noticed that this statute related simply to a ward who, while under guardianship, removed out of this State. St. 1861, c. 130, and St. 1862, c. 139, extended the provisions of this act to the case of every non-resident ward having a guardian in this State. St. 1866, c. 122, § 1, substituted the Probate Court for the Supreme Judicial Court. Section 2 of this statute, although repealed by St. 1875, c. 189, was afterwards re-enacted by St. 1877, c. 127, and appears now as Pub. Sts. c. 139, § 40, above quoted.

We think that this statute has no reference to cases of a voluntary payment or delivery to the guardian, but that it was intended to relieve the domestic representative from taking the risk of paying to the wrong person, and to that end to enable him to obtain, after due notice, a domestic decree which would protect him. In this way, he could be relieved from any necessity of an examination into the fact or validity of the appoint-

ment of the foreign representative or the nature of the powers thereby conferred upon him. But if he chooses not to invoke the operation of the statute, but to pay voluntarily, he stands upon the common law as before, and if the payment is made to the person authorized by the laws of his appointment to receive it, it is a discharge *pro tanto.* See *Chadbourn* v. *Chadbourn,* 9 Allen, 173, as to an analogous statute.

We are of opinion, therefore, that the ruling of the court that the defendants had the right to pay over the legacy to the guardian appointed by the Probate Court in Maine, and also the other rulings objected to, so far as material, were correct.

*Judgment for the defendants.*