MICHAEL A. FLANAGAN, administrator, & others *vs.* MARY JOSEPHINE RYAN BABINEAU & others.

Essex. January 5, 1955. — March 9, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Merger. Real Property,* Merger. *Mortgage,* Of real estate: assignment. *Conservator. Res Judicata.*

A merger of the interest acquired by a conservator's ward as assignee of two real estate mortgages with the equity of redemption already owned by the ward did not result from payment by the conservator of the entire amount of the mortgages out of a savings deposit of the ward and the conservator's procuring the assignment of the mortgages and a transfer of the mortgage notes to the ward; and at the death of the ward the mortgages and notes passed under the ward's will as personal property, and the real estate passed to the devisees subject to the mortgages. [381–382, 380]

There was no merit in a contention of appellants from a decree of a Probate Court upon a petition for instructions that a certain matter was res judicata where there was no evidence to sustain the contention and nothing in the record to show that the point was brought to the trial judge's attention other than by allegations in the answers. [382–383]

PETITION, filed in the Probate Court for the county of Essex on October 14, 1953.

The case was heard by *Costello,* J.

In this court the case was submitted on briefs.

*Warren F. Fitzgerald,* for the respondent Babineau, &
*Henry F. Collins,* for the respondents Sullivan and another.

*Charles A. McCarthy,* for the respondent Grey Nuns of
Lawrence.

COUNIHAN, J. This is a petition for instructions by the
administrator with the will annexed of the goods and es-
tate not already administered of Mary R. Johnson, late of
Lawrence. By amendment Michael A. Flanagan and Ray-
mond P. Dellinger, cotrustees under said will, were joined
as petitioners. The respondents were Mr. Flanagan and
Mr. Dellinger, cotrustees as aforesaid, Mary Josephine
Ryan Babineau and John J. Sullivan, life beneficiaries
under the trust, the St. Mary's Church Society of Law-
rence, devisee of the remainder in certain real estate on
Elm and Lawrence streets in said Lawrence, which com-
prised the res of said trust, and the Grey Nuns of Lawrence,
residuary legatee under said will.

The will devised this real estate in trust to pay the net
income to said Babineau and Sullivan during their lives
and, upon the death of the survivor, to the St. Mary's
Church Society of Lawrence. The petitioners sought in-
structions as to whether two certain mortgages on this real
estate and the mortgage notes were personal property of
the estate of the testatrix at her death which passed to the
residuary legatee or whether there had been a merger of
these mortgages with the equity of redemption in this real
estate which was owned by the testatrix at her death. The
judge entered a decree that these mortgages and notes were
personal property of the estate of the testatrix and passed
under the residuary clause of her will, and that there was
no merger of these mortgages with the equity of redemption
of the testatrix. He further decreed that the trustees held
said real estate subject to these mortgages. There was no
error.

The case comes here upon the appeals of Babineau,
Sullivan, and the St. Mary's Church Society of Lawrence.
The judge made a report of material facts, and a transcript

of the evidence at the hearing before the judge is in the record.

The report of material facts and the transcript disclose that in 1941 the testatrix became the owner of this real estate on Elm and Lawrence streets in Lawrence as a devisee under the will of Michael J. Ryan. The real estate was then subject to two mortgages to the Essex Savings Bank, one for $8,000 and another for $3,400. She paid the interest on these mortgages until sometime in 1947 when Cornelius J. Mahoney was appointed conservator of her estate. The conservator paid the interest up to July 1, 1947. On that day there was a deposit in the Essex Savings Bank of between $14,000 and $15,000 in the name of his ward. On this deposit the bank was paying interest at the rate of 2% per annum and the interest on the mortgages was 5% per annum. On July 1, 1947, the conservator out of this deposit paid the bank the amount of the principal and the interest due on these mortgages. He took an assignment of the mortgages in the name of his ward and the notes were indorsed by the bank without recourse and turned over to her. Thereafter the conservator carried the mortgages and the notes as assets of the estate of the ward. He paid no interest on these notes thereafter. He paid these notes and took an assignment of the mortgages to save his ward the difference between the interest paid by the bank on the deposit and the interest on the notes, a saving of 3%.

The real question before us is whether the assignment of these mortgages to the ward when she was the owner of the equity of redemption of the real estate operated as a merger of title in the ward so that these mortgages were extinguished.

Ordinarily where the owner of the equity of redemption in such property takes an assignment to himself of a mortgage outstanding on such property it becomes a question whether the owner intended such assignment to operate as a merger of title or not. This was early expressed in *Gibson* v. *Crehore*, 3 Pick. 475, where it was said at page 482, "When the pur-

chaser of a right to redeem takes an assignment, this shall or shall not operate as an extinguishment of the mortgage, according as the interest of the party taking this assignment may be, and according to the real intent of the parties. . . . Mergers are odious in equity, and shall not be allowed where the estates may well stand together." *Hunt v. Hunt,* 14 Pick. 374, 384. *Cheffee v. Geageah,* 253 Mass. 586, 589.

In the case at bar the owner of the equity of redemption was under conservatorship so that generally speaking no intent on her part to create a merger may be found. The question therefore is whether her conservator created such a merger. We think not. See *Johnson v. Nourse,* 258 Mass. 417, 419-420, where it was said, "The conservator had no title to the property of the ward. . . . His authority to use it was limited by her necessities. . . . A conservator, except as to the custody of the person, has the rights and duties of a guardian of an insane person, G. L. c. 201, § 20 [now G. L. (Ter. Ed.) c. 201, § 20]. Lord Hardwicke, in *Ex parte Annandale,* Ambler, 79, 80, declared: 'In cases of lunacy, the first care of the Court is the maintenance of the lunatic; and after that, it is a rule never departed from, not to vary or change the property of the lunatic, so as to affect any alteration as to the succession to it.'" If the action of the conservator in taking an assignment of these mortgages to the ward operated as a merger, then an alteration in the ultimate disposition of the estate of the ward would have been effected. It is reasonable to infer that if the deposit of the testatrix in the Essex Savings Bank had not been used to pay for the assignments of these mortgages it would have fallen into the residue of the estate of the testatrix and by her will would have passed to the Grey Nuns of Lawrence.

The appellants in their answers to this petition allege that a judge of the Probate Court, in proceedings concerning the fourth and fifth accounts of the conservator, struck out the appearance of said Babineau, one of the appellants here, objecting to the allowance of said accounts. They

argue in their brief without any citation of relevant authority that such action made res judicata the question of merger. There is nothing to their contentions. There was no evidence to sustain the allegations in the answers of the appellants. General Laws (Ter. Ed.) c. 231, § 87, expressly provides that "Pleadings shall not be evidence on the trial, but the allegations therein shall bind the party making them." Furthermore there is nothing in the record, other than the answers, to show that these matters were brought to the attention of the judge.

*Decree affirmed.*