THE MASSACHUSETTS COMPANY, INC., trustee, *vs.* SIDNEY E. BERGER & others.

Suffolk.    November 20, 1972. — December 26, 1973.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Trust,* Revocation.  *Guardian,* Foreign guardian, Revocation of trust.

An attempt by one appointed by a Florida court as guardian of a Florida domiciliary to exercise a power of the ward as settlor to revoke two revocable inter vivos trusts was ineffective where the trusts were located in Massachusetts and were expressly made subject to administration in accordance with Massachusetts law and the guardian had not been appointed as guardian in Massachusetts under G. L. c. 201, § 30, and so had no power under § 45. [625] GOODMAN, J., concurring.

PETITION in equity filed in the Probate Court for the county of Suffolk on July 24, 1970.

The case was heard by *Wilson, J.,* who entered a decree that the petitioner trustee should hold and administer, in accordance with their terms, the principal and accumulated income of two trusts mentioned in the opinion.

*Philip R. White (Philip R. White, Jr.,* with him) for Sidney E. Berger & others.

*William J. Cheeseman* for Martin Berger & others.

ARMSTRONG, J. This petition for instructions was brought by the trustee of two revocable inter vivos trusts located in Massachusetts and expressly made subject to administration in accordance with the laws of Massachusetts. The settlor, who was a Florida domiciliary, was declared incompetent by a Florida court, which appointed a Florida guardian, and which directed the guardian to "do such acts or execute such documents as may be necessary" to exercise the settlor's power to revoke. The Florida guardian by letter to the trustee purported to revoke the trusts. The trustee replied that the guardian should seek appointment as guardian in Massachusetts under G. L. c. 201, § 30. The Florida guardian instead began a proceeding under G. L. c. 204, § 3, for a license to receive the trust property, but the settlor died before that proceeding concluded. The rival claimants are beneficiaries under the settlor's will, who contend that the letter of revocation had the effect of terminating the trusts, and beneficiaries under the trusts, who contend that the revocation by the Florida guardian was of no legal effect. We are of the opinion that the purported revocation was of no effect. Whatever power a guardian might have had to revoke these trusts must derive from G. L. c. 201, § 45. *Parry* v. *Parry,* 316 Mass. 692, 695-696 (1944). The Florida guardian could derive no authority from § 45 until he had been appointed guardian under G. L. c. 201, § 30, for § 45 does not by its terms confer any power on a foreign guardian and "at common law the authority of a guardian . . . is local and is restricted to the limits of the State in which he is appointed." *Gardiner* v.

*Thorndike,* 183 Mass. 81, 82 (1903). The proceeding begun under G. L. c. 204, § 3, could confer no authority to revoke.

*Decree affirmed.*

*Costs and expenses of this appeal to be in the discretion of the Probate Court.*

This case was initially heard by a panel composed of Justices Rose, Goodman and Armstrong and was thereafter submitted on the record and briefs to the Chief Justice and Justice Keville, both of whom took part in this decision in accordance with the provisions of Rule 1:18 of this court. Justice Grant took no part in the consideration or decision of the case.

GOODMAN, J.    (concurring in result).    I reach the result in this case by a different route since I cannot accept as a general proposition the premise that our courts will not recognize the act of a foreign guardian as effective to entitle him to property in this State. It is true that, since the trust instruments provide for administration in accordance with the laws of Massachusetts and since the trust property and the trustee are in any event located in Massachusetts, Massachusetts law determines what, if any, effect should be given to the Florida guardian's letter to revoke the trusts. *National Shawmut Bank* v. *Cumming,* 325 Mass. 457, 463-464 (1950). *New England Merchants Natl. Bank* v. *Mahoney,* 356 Mass. 654, 656-657 (1970). *Russell* v. *Lovell,* 362 Mass. 794 (1973). However, our courts have often recognized and given effect to acts of a foreign fiduciary if done without resort to our forum.[1] Thus in *Gardiner* v.

---

[1] The statement in *Gardiner* v. *Thorndike,* 183 Mass. 81, 82 (1903), that "the authority of a guardian . . . is local and is restricted to the limits of the State in which he is appointed" seems to me to be too broad. It seems to me to mean at most "that a guardian has no standing in the courts of any other State than that in which he is appointed." *Id.* at 82. Even this generalization requires limitation. See Newhall, Settlement of Estates (4th ed.) § 70, p. 216, pointing out that a "foreign executor or administrator has, however, sufficient standing to appeal from a decree of the probate court appointing an executor or an administrator here, or to bring a petition for instructions as to his liability to pay an inheritance tax here" and citing *Martin* v. *Gage,* 147 Mass. 204 (1888), and *Callahan* v. *Woodbridge,* 171 Mass. 595 (1898).

*Thorndike,* 183 Mass. 81 (1903), the Supreme Judicial Court recognized the receipt of a Massachusetts legacy by a Maine guardian ("the claimant whose demands have thus been conceded") as a defense to a later suit by the ward. The court said (p. 82): "It is also well settled that if an administrator or executor can collect in a State other than that of his appointment the goods or credits of the deceased . . . without resort to the courts, he may properly do so; and for reasons of comity such acts are regarded as valid to protect the parties. . . . [See *Martin* v. *Gage,* 147 Mass. 204, 206 (1888); *Anthony* v. *Anthony,* 161 Mass. 343, 351-352 (1894); *Morrison* v. *Hass,* 229 Mass. 514 (1918); *Morrison* v. *Berkshire Loan & Trust Co.* 229 Mass. 519 (1918); *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 23 (1935); Restatement 2d: Conflict of Laws, § 322; McDowell, Foreign Personal Representatives, c. 5.] Such is the law with reference to voluntary payments made to a foreign administrator or executor, and we see no reason why it should not be the same with reference to such payments made to a foreign guardian, if by the law of the State from which he derives his appointment he is authorized to receive them." See *Rand* v. *Hubbard,* 4 Met. 252 (1842) (presentment and demand on behalf of a foreign executor was effective to dishonor a note; the court also said that an endorsement by a foreign executor would be given effect in this State in a suit on the note); *Hutchins* v. *State Bank,* 12 Met. 421 (1847) (power of attorney by a foreign executor authorizing an agent to sell stock in a Massachusetts corporation); *Greves* v. *Shaw,* 173 Mass. 205 (1899); *Wilkins* v. *Ellett,* 108 U. S. 256 (1883).

The recognition of such acts by a foreign guardian does not derogate from the jurisdiction of the Probate Court in Massachusetts to determine, as with a domestic guardian, the propriety of any such act upon petition of any aggrieved party. Such an act is "voidable." *Witherington* v. *Nickerson,* 256 Mass. 351, 355 (1926). See *Dolbeare* v. *Bowser,* 254 Mass. 57, 61-62 (1925); *Drain* v. *Brookline Sav. Bank,* 327 Mass 435, 441 (1951), and cases cited; Newhall, Settlement of Estates (4th ed.) § 390, pp. 554-555. Cf. *Hays* v.

*Heinz,* 317 Mass. 337, 340 (1944); *May* v. *Skinner,* 149 Mass. 375, 380 (1889). The propriety of the revocation was not raised in the Probate Court below and it is conceded that the Florida court did no more than authorize the guardian to give the notice of revocation and thereafter to go into the Massachusetts courts if necessary. Both parties agree that the only issue is the effectiveness of that notice.[2]

The act of revoking a trust as a step in the collection of trust assets has much in common with the various steps taken by foreign guardians to collect property which have been given effect by our courts;[3] but the question is whether under Massachusetts law there are limitations on the power to revoke not applicable to other acts in the collection of property. Whether the power to revoke which at common law is suspended while the holder is incompetent (*Parry* v. *Parry,* 316 Mass. 692, 696 [1944]; Scott, Trusts [3d ed.] § 330, p. 2596) is nevertheless exercisable and the conditions for its exercise depend on the statutory scheme setting out the powers of guardians and the jurisdiction of

---

[2] It is therefore not necessary to decide (nor have the appellees pressed) the validity of the service on the parties as recited in the Florida decree (see *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 23 [1935]) and characterized in the agreed statement of facts as "purported personal service" on all but the three beneficiaries served in Florida. Similarly, it is not necessary to decide whether the activities of the trustee in Florida and the notice it was given were a sufficient basis for jurisdiction over the trustee for the purpose of the constitutional requirements of full faith and credit or as a matter of Florida law. See *Hanson* v. *Denckla,* 357 U. S. 235, 250-251 (1958), in which the court found that the trustee had "no minimal contacts" with the forum, citing by contrast *McGee* v. *International Life Ins. Co.* 355 U. S. 220 (1957). See also *Harvey* v. *Fiduciary Trust Co.* 299 Mass. 457, 464 (1938); Scott, Comment, *Hanson* v. *Denckla,* 72 Harv. L. Rev. 695, 700 et seq.

[3] The Supreme Judicial Court has observed that "the power of . . . revocation makes the beneficial ownership of the trust property, as a practical matter for many purposes, including some tax purposes, essentially equivalent to outright ownership by the settlor." *Kirby* v. *Board of Assessors of Medford,* 350 Mass. 386, 389 (1966), referring to the cases cited in *Dexter* v. *State Tax Commn.* 350 Mass. 380, 385 (1966). The closely analogous general power of appointment presently exercisable (see Restatement: Property, § 318, p. 1823) has been characterized as "a close approximation to a property interest." *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 366-367 (1948). *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 9 (1962). See Am. Law of Property, § 23.4, pp. 467-468, referring to a donee of a general power, "Although technically he has no title to the property until he exercises the power, he can obtain the title, and thereafter enjoy all the benefits of ownership, simply by going through a mere formality. In order to enjoy the property he has but to reach for it." But compare *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 472-474 (1944), characterizing the power to revoke as "not property."

the Probate Court. *Hicks* v. *Chapman,* 10 Allen 463, 464-465 (1865). *Nelson* v. *Katzmann,* 243 Mass. 240, 242 (1922). Fratcher, Powers and Duties of Guardians of Property, 45 Iowa L. Rev. 264, 291-292.

The general power of a guardian phrased as "the management of all his estate," G. L. c. 201, § 12 (see also G. L. c. 201, § 37), has not been given an expansive meaning. Thus it has not been construed to include powers which alter the succession to the ward's property. Newhall, Settlement of Estates, § 388, p. 546. To the extent that a power may alter the succession to property, it has been characterized as a personal right involving the exercise of discretion rather than a property right (see fn. 3) and cannot be exercised by a guardian except as specifically authorized by statute. *Pinkerton* v. *Sargent,* 102 Mass. 568 (1869) (widow's right to waive will prior to St. 1871, c. 97, now included in G. L. c. 201, § 45). *Dolbeare* v. *Bowser,* 254 Mass. 57, 60 (1925). *Flanagan* v. *Babineau,* 332 Mass. 379, 382 (1955). *In re A.* [1904] 2 Ch. 328, 336. Fratcher, Guardians of Property, 45 Iowa L. Rev., 264, 317, 318, and cases cited at n. 177. Note, Illinois Conservator's Right to Invade Joint Savings Account, 48 Chi.-Kent L. Rev. 230, 233. See Bogert, Trusts and Trustees, § 1000, pp. 491-492. See also *Jones* v. *Maguire,* 221 Mass. 315, 316 (1915); *Guthrie* v. *Canty,* 315 Mass. 726, 728 (1944). Thus, if the power to revoke in this case, changing as it would the succession to the property among the claimants, may be exercised by a guardian, the authority must be found in G. L. c. 201, § 45,[4] and more specifically in the first independent clause if the prior approval of the Probate Court is not to be required (but see *Kent* v. *Morrison,* 153 Mass. 137,

---

[4] General Laws c. 201, § 45, provides, "If property, rights or benefits given by will or by law depend upon the election, waiver or other act of a person incompetent by reason of mental illness or minority to perform the same, his guardian may make such election or waiver or perform such act; [first proviso] provided, that no waiver of the provisions of a will under this section shall be valid until approved by the probate court after notice to such persons, if any, as the court shall deem proper and a hearing thereon, and [second proviso] provided also that if a power is vested in a mentally ill person for his own benefit, or his consent is required for the exercise of any power where the power of consent is in the nature of a beneficial interest in himself, his guardian may, by order of the probate court,

140 [1891]) or, failing that, in the second proviso which, however, involves Probate Court approval not obtained in this case.

From the history of the statute it is not entirely clear whether "rights or benefits given . . . by law" in the first independent clause (fn. 4) include the common law power to revoke a trust or whether the words "by law" are restricted to statutory provisions. Standing by itself, apart from the history and context of the statute, the phrase is opaque. See *Mississippi River Fuel Corp.* v. *Slayton,* 359 F. 2d 106, 118-119 (8th Cir. 1966) (discussion and citation of cases); *State* v. *Dyer,* 67 Vt. 690, 697 (1894); *Piccard* v. *Sperry Corp.* 48 F. Supp. 465, 468 (S.D. N.Y. 1943). See also *Commonwealth* v. *Dana,* 2 Met. 329, 338 (1841). The statute originated in St. 1871, c. 97, which provided, "When property rights or benefits given by will . . . or by any provision of law, depend upon the election, waiver or other act of a person incompetent by reason of insanity or minority to exercise or perform the same, the guardian of such person may make the election or waiver or perform such act." It was passed soon after the decision in *Pinkerton* v. *Sargent,* 102 Mass. 568 (1869) (see *Dolbeare* v. *Bowser,* 254 Mass. 57, 60 [1925]), and may well have been concerned with (in addition to "rights and benefits" given by will) statutory powers in connection with decedents' estates, *e.g.,* the waiver of wills, dower, curtesy, and widows' allowances. Statute 1918, c. 68, § 4, the origin of the second proviso of G. L. c. 201, § 45 (see fn. 4),[5] providing for approval of the Probate Court, by contrast clearly comprehends common law powers including powers of revocation. Yet that statute when passed made no refer-

---

made after notice to such persons, if any, as the court shall deem proper, exercise the power or give the consent in such manner as shall be authorized or directed by the order. . . ." Compare St. 1969, c. 422, amending G. L. c. 201, § 38, to permit estate planning by a guardian with the approval of the Probate Court.

[5] The "power . . . vested in a mentally ill person for his own benefit" in this statute is substantially the same language as in the Lunacy Act of 1890, 53 Vict. c. 5, § 120(1). See *In re Hirst,* [1892] Weekly Notes, 177; *In re A.* [1904] 2 Ch. 328; *In re E. D. S.* [1914] 1 Ch. 618.

ence to the 1871 statute by then incorporated in R. L. (1902) c. 145, § 33. This would seem to indicate that the 1918 statute was not thought by the Legislature to affect the applicability of the 1871 statute dealing with "rights or benefits given . . . by any provision of law." Whether the separate scope of these provisions was maintained through the subsequent combinations of and changes in them (G. L. [1921] c. 201, § 45; St. 1924, c. 8; G. L. [1932] c. 201, § 45) is a close question depending on the weight given those changes.[6] See *Doggett* v. *Hooper,* 306 Mass. 129, 132 (1940); *Scaccia* v. *Boston Elev. Ry.* 317 Mass. 245, 251 (1944).

However, the conclusion that the exercise of the power to revoke requires the approval of the Probate Court under the second proviso is indicated by *Parry* v. *Parry,* 316 Mass. 692, 696 (1944), in which the Supreme Judicial Court held that the contract right to change a beneficiary of an insurance policy was within the second proviso in G. L. c. 201, § 45, and stated that the right could "be exercised only upon approval by the Probate Court." The implication is that this common law contract right was not within the "rights and benefits . . . given by law" in the first independent clause of G. L. c. 201, § 45, which does not mention the approval of the Probate Court. Thus, I concur

---

[6] In the revision of 1921, the two statutes were incorporated into G. L. (1921) c. 201, § 45. The words "provision of" were stricken from the former § 33 which was combined with the 1918 statute to read as follows: "If property, rights or benefits given by will or by law depend upon the election, waiver or other act of a person incompetent by reason of insanity or minority to perform the same, his guardian may make such election or waiver or perform such act; but if a power is vested in an insane person for his own benefit, or his consent is required for the exercise of any power where the power of consent is in the nature of a beneficial interest in himself, his guardian may, by order of the probate court, made after notice to such persons, if any, as the court shall deem proper, exercise the power or give the consent in such manner as shall be authorized or directed by the order."

This is some indication that the two clauses joined by "but" were thought to be co-extensive — or at least that the second was thought to be included in the first — with the result that the guardian could act without resort to the Probate Court under the first clause or at his option by order of the Probate Court under the second clause (now the second proviso). Note also the sharp contrast between the language of the second proviso and the language of the first proviso enacted by St. 1924, c. 8, entitled "An Act requiring the approval of the probate court to a waiver of the provisions of a will by a guardian." See *Dolbeare* v. *Bowser,* 254 Mass. 57, 60-61 (1925).

that proceedings under G. L. c. 201, § 45 (second proviso) were required, the guardian first having qualified under G. L. c. 201, § 30.