VICTOR S. EVERETT, Appellant, *v.* ELLIS L. PHILLIPS et al., Respondents, Impleaded with Others.

Argued October 22, 1941; decided June 4, 1942.

*Jay Leo Rothschild, Joseph Nemerov, I. Vernon Werbin, Louis Rivkin* and *Israel H. Mandel* for appellant. The propriety of respondents' conduct will not be measured by standards of actual and intentional fraud. It is enough if, occupying a dual trustee

position, the record of respondents' performance is such that the reasonable mind is satisfied that they did not act solely in the interests of the beneficiary which now calls them to account. (*Southern Pacific Co.* v. *Bogert,* 250 U. S. 483; *Hyams* v. *Calumet & Hecla Mining Co.,* 221 Fed. Rep. 529; *Blaustein* v. *Pan American Petroleum & Transport Co.,* 174 Misc. Rep. 601; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Pepper* v. *Litton,* 308 U. S. 295; *Geddes* v. *Anaconda Copper Mining Co.,* 254 U. S. 590; *Isaac* v. *Marcus,* 258 N. Y. 257; *Koral* v. *Savory, Inc.,* 276 N. Y. 215; *Sage* v. *Culver,* 147 N. Y. 241.) While courts will not ordinarily interfere with the management of the internal affairs of a corporation, an exception to this rule necessarily is made where the corporation's directors have dual obligations and dual relations, which, by their very nature, prevent an unprejudiced exercise of judgment. (*United Copper Securities Co.* v. *Amalgamated Copper Co.,* 244 U. S. 261; *Koral* v. *Savory, Inc.,* 276 N. Y. 215; *Munson* v. *S., G. & C. R. R. Co.,* 103 N. Y. 58; *Levy* v. *Pacific Eastern Corp.,* 153 Misc. Rep. 488; *Billings* v. *Shaw,* 209 N. Y. 265; *Wardell* v. *Union Pacific R. R. Co.,* 103 U. S. 651; *Blaustein* v. *Pan American Petroleum & Transport Co.,* 174 Misc. Rep. 601; *Farmers' Loan & Trust Co.* v. *New York & Northern Ry. Co.,* 150 N. Y. 410; *Delaware & Hudson Co.* v. *Albany & Susquehanna R. R. Co.,* 213 U. S. 435; *Doctor* v. *Harrington,* 196 U. S. 579; *Meinhard* v. *Salmon,* 249 N. Y. 458.) Proof of loss to the Empire Power Corporation was ample. Whether or not there was actual loss need not be established as a condition precedent. (*Rose* v. *Durant,* 44 App. Div. 381; *Owen* v. *Blumenthal,* 280 N. Y. 96; *Farmers' Loan & Trust Co.* v. *N. Y. & N. Ry. Co.,* 150 N. Y. 410; *Blaustein* v. *Pan American Petroleum & Transport Co.,* 174 Misc. Rep. 601; *Sage* v. *Culver,* 147 N. Y. 241; *Barnard* v. *Gantz,* 140 N. Y. 249; *Fisher* v. *Bishop,* 108 N. Y. 25; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Meeker* v. *Winthrop Iron Co.,* 17 Fed. Rep. 48; *Pepper* v. *Litton,* 308 U. S. 295; *O'Brien* v. *Fitzgerald,* 6 App. Div. 509; 150 N. Y. 572; *Beatty* v. *Guggenheim Exploration Co.,* 225 N. Y. 380; *Meinhard* v. *Salmon,* 249 N. Y. 458.)

*Stephen Callaghan, Ralph Stout* and *Thomas A. Gaffney* for Ellis L. Phillips et al., respondents. The loans made by the power corporation to the lighting company were not *ultra vires* or in viola-

tion of law. (*Morse* v. *Equitable Life Assur. Society*, 124 App. Div. 235; *Una* v. *Dodd*, 39 N. J. Eq. 173; *Hess* v. *Sloane*, 66 App. Div. 522; 173 N. Y. 616; *Steinway* v. *Steinway & Sons*, 17 Misc. Rep. 43; *Holmes* v. *Willard*, 125 N. Y. 75; *Murray* v. *Smith*, 166 App. Div. 528; *People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1; *Matter of Staten Island Edison Corp.* v. *Pub. Serv. Comm.*, 263 N. Y. 209.) The making of the loans and the refunding thereof were matters within the discretion and judgment of the directors of the power corporation; the evidence herein establishes that the loans and refundings were made in good faith and have been and are of substantial benefit and advantage to the corporation; and the evidence affords no basis for the interlocutory judgment of the Special Term. (*Leslie* v. *Lorillard*, 110 N. Y. 519; *City Bank Farmers' Trust Co.* v. *Hewitt Realty Co.*, 257 N. Y. 62; *Rous* v. *Carlisle*, 261 App. Div. 432; *Spiegel* v. *Beacon Participations*, 297 Mass. 398; *Gamble* v. *Queens. County Water Co.*, 123 N. Y. 91; *Burden* v. *Burden*, 159 N. Y. 287; *Hine* v. *Lausterer*, 135 Misc. Rep. 397; 232 App. Div. 719; 257 N. Y. 523; *Hart* v. *Ogdensburg & L. C. R. R. Co.*, 89 Hun, 316; *Lewisohn Bros.* v. *Anaconda Copper Mining Co.*, 26 Misc. Rep. 613; *McNab* v. *McNab & Harlin Mfg. Co.*, 62 Hun, 18; 133 N. Y. 687; *Cleary* v. *Higley*, 154 Misc. Rep. 158; 246 App. Div. 698; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Helfman* v. *American Light & Traction Co.*, 121 N. J. Eq. 1; *Matter of Clark*, 257 N. Y. 132.)

*Charles G. Blakeslee, John J. Donohue* and *Elmer B. Sanford* for Long Island Lighting Company, respondent.

LEHMAN, Ch. J. The plaintiff is the owner of 100 shares of the " participating stock " of Empire Power Corporation. The issued and outstanding capital stock of the corporation consists of 77,000 shares of six per cent cumulative preferred stock with a stated value of $7,133,000; 400,000 shares of " participating " stock with a stated value of $3,150,000, and 400,000 shares of common stock with a stated value of $1,000,000. The directors of the corporation and members of their families owned all the common stock and large amounts of the preferred stock and the " participating " stock. At the same time they also owned or controlled, directly or indirectly, 1,500,000 shares, constituting a majority of the common

stock of Long Island Lighting Company. In 1931 and 1932 the Empire Power Corporation loaned to Long Island Lighting Company large sums of money. Payment of these loans was from time to time extended and the loans are still unpaid. Claiming that these loans and the extension of time of payment were *ultra vires* and were " not made to promote any business purpose of Empire Power Corporation, but were made for the sole purpose of promoting the interests of the individual defendants and that of Long Island Lighting Company," the plaintiff has brought an action in behalf of himself and other minority stockholders in which he has asked that directors of Empire Power Corporation named as individual defendants be compelled to demand payment of the indebtedness by Long Island Lighting Company and that " in the event that the said indebtedness cannot be collected from Long Island Lighting Company, then that the individual defendants shall be directed to pay the same." At Special Term an interlocutory judgment was granted awarding substantially the relief which the plaintiff asked. The judgment was unanimously reversed by the Appellate Division on the law and the facts and the complaint was dismissed.

To establish his cause of action the plaintiff must show that the individual defendants in causing the Empire Power Corporation to loan the moneys to the Long Island Lighting Company and in failing to demand payment of such loans as they became due, have acted in disregard of the duties they owe Empire Power Corporation and that Empire Power Corporation has suffered, or at least may suffer, some detriment or loss. In a long line of decisions this court has held directors who control corporate action responsible for dereliction of duty where they have used the property of the corporation or managed its affairs to promote their own interests, disregarding the interests of the corporation. Power of control carries with it a trust or duty to exercise that power faithfully to promote the corporate interests, and the courts of this State will insist upon scrupulous performance of that duty. Yet, however high may be the standard of fidelity to duty which the court may exact, errors of judgment by directors do not alone suffice to demonstrate lack of fidelity. That is true even though the errors may be so gross that they may demonstrate the unfitness of the directors to manage the corporate affairs.

The plaintiff here is asserting a cause of action for wrong done to the corporation of which he is a minority stockholder. In such an action it is immaterial whether the minority stockholder, who asserts it, has a large or a small interest; but in determining whether those who have power to control the corporation have committed a wrong either to the corporation or to its stockholders, the corporate capital structure, the certificate of incorporation, and the corporate constitution or by-laws may be factors of great weight; for, within limits prescribed by law, these define to whom the power of control is entrusted, its scope and the manner in which it must be exercised. Directors are elected by the holders of stock which has voting rights. Here the certificate of incorporation of Empire Power Corporation provides that only the holders of common stock shall have voting rights. According to the testimony of the defendant Phillips, who has been president of the corporation from its formation in 1924 and who with George W. Olmsted, its vice-president until he died in 1940, owned or controlled, either directly or indirectly, all of its common stock, the corporation was "formed for the purpose of financing and taking care of the various companies in which we were then interested and later became interested further." They invited the public to subscribe to the capital of the corporation which would be managed by directors in whose election no other stockholders would have any part, and those who might furnish the capital which these directors would manage were not left under any illusion that the directors, when acting for the corporation, would be free from other interests which might prevent an unprejudiced exercise of judgment. The certificate of incorporation contained a provision that "No contract or other transaction between the Corporation and any other corporation shall be affected or invalidated by the fact that any one or more of the directors of this Corporation is or are interested in, or is a director or officer, or are directors or officers of such other corporation, * * * and no contract, act or transaction of this Corporation with any person or persons, firm or corporation, shall be affected or invalidated by the fact that any director or directors of this Corporation is a party, or are parties to or interested in such contract, act or transaction, or in any way connected with such person or persons, firm or association, and each and every person who may become

a director of this Corporation is hereby relieved from any liability that might otherwise exist from contracting with the Corporation for the benefit of himself or any firm, association or corporation in which he may be in anywise interested." It is against this background that the court must consider the claim of the appellant that he has established by the overwhelming weight of testimony that the directors were faithless to their trust.

The complaint of the plaintiff concerns, as we have said, loans made to Long Island Lighting Company. The defendants controlled that corporation. Their stock interest in it was large. According to the balance sheets of the corporation introduced in evidence by the plaintiff, the corporation, in 1931 and also at the time of the trial, had a very large surplus and was earning large profits, but needed money for the development of its business. Corporate balance sheets unfortunately do not always present a correct picture of the corporate finances. The Public Service Commission — on appropriate occasions — can and does make independent examinations of the balance sheets of utility corporations; a court can ordinarily consider only the evidence produced by the parties and no evidence was produced which would challenge the correctness of the balance sheets or which would enable the court to reconstruct them. We may not assume that the financial condition of the lighting company was not favorable, but the evidence establishes that unless it had succeeded in borrowing money it would have been obliged to discontinue payment of dividends, at least temporarily, and to use all its earnings for needed improvements, and that, perhaps, the earnings might have provided insufficient moneys for its needs. The evidence establishes, too, that the defendants expected to derive benefit not only as stockholders but also in other ways from the moneys which, as directors, they caused Long Island Lighting Company to borrow. The question remains whether in seeking benefit for themselves and for the Long Island Lighting Company, which they controlled through stock ownership, they caused Empire Power Corporation, which the defendants also controlled through stock ownership, to make a loan, which might work harm to the Empire Power Corporation.

The Long Island Lighting Company at the end of 1930 owed banks approximately $10,500,000 on short term, unsecured notes. Though, according to the balance sheet of the Long Island Lighting Company, it had assets greatly in excess of its indebtedness, and had a net income of more than $3,000,000 a year, its financial position was not entirely safe or sound. The banks might press for payment of short term obligations at a time when Long Island Lighting Company might find it difficult to borrow elsewhere the money to pay such obligations. Moreover, the needs of the territory served by Long Island Lighting Company required constant extension of its plant. We may assume that prudent and conservative directors would, in such circumstances, have sought to obtain by an issue of bonds the money the corporation might require to refund its short term obligations and for new capital. We need not resort to doubtful inferences to find that the directors in their management of Long Island Lighting Company did not feel themselves restricted to conservative plans and methods. The evidence clearly indicates that.

Stocks, bonds, notes or other evidences of indebtedness " payable at periods of more than twelve months after the date thereof " could not be issued by Long Island Lighting Company without approval of the Public Service Commission obtained in accordance with section 69 of the Public Service Law (Cons. Laws, ch. 48). The Long Island Lighting Company did in 1932 apply to the Public Service Commission for permission to issue approximately $15,000,000 of refunding bonds. The directors of the Long Island Lighting Company preferred, however, to borrow the moneys under a plan which would not be subject to the restrictions which the Public Service Commission might impose as conditions to its approval. An inference that the directors were influenced by that consideration when they sought to borrow the moneys for Long Island Lighting Company upon notes payable within one year from that date might reasonably be drawn from the evidence in this case. The transaction would not be unlawful for that reason. The Legislature has in the public interest provided that bonds or notes evidencing loans for a longer period than one year may be issued only with the approval of the Commission. The Legislature has not decreed that the public interest requires similar safeguards

for issues where the loans became due within the year. The Legislature has drawn the line, and " the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it." (*Superior Oil Co.* v. *Mississippi*, 280 U. S. 390, 395, opinion by Mr. Justice Holmes.) True, the inference might reasonably be drawn that the directors of the Long Island Lighting Company arranged that Empire Power Corporation should loan the money on short term notes with the expectation that Empire Power Corporation, under their control, would continue to renew the loans as they became due, until the time arrived when it would be convenient for Long Island Lighting Company to repay them. The directors regarded these loans as " investments " rather than temporary loans which would be paid at maturity. Nevertheless, the lender could have insisted upon payment of the loans as they became due, and the defendants can be charged with no wrong to the Empire Power Corporation on account of repeated renewals of the loans nor on account of the way in which they were handled, without proof that in these acts the defendants willfully failed to protect the interests of Empire Power Corporation in order to serve better their personal interests and the interests of the Long Island Lighting Company. There may be difference of opinion as to whether these defendants as directors of Empire Power Corporation acted wisely in the handling of the loans. There are many matters disclosed by the record which cast doubt upon the prudence, the wisdom, and the concern for the public interest shown by these directors. We are constrained, however, to agree with the Appellate Division that there is little, if any, evidence to sustain a finding that they have violated their trust or have failed to protect the interests of the Empire Power Corporation according to the dictates of their judgment, be that judgment good or bad.

It is argued, however, that the transactions in which the defendants acted as directors both of the Empire Power Corporation and the Long Island Lighting Company should be set aside because the dual position of these directors precluded an unprejudiced exercise of judgment. The dual position of the directors making the unprejudiced exercise of judgment by them more difficult, should lead the courts to scrutinize these transactions with care.

(*Sage* v. *Culver*, 147 N. Y. 241; *Koral* v. *Savory, Inc.*, 276 N. Y. 215; *Geddes* v. *Anaconda Copper Mining Co.*, 254 U. S. 590; *United Copper Securities Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261.) It does not, however, alone suffice to render the transactions void, and the provision of the certificate of incorporation of Empire Power Corporation expressly authorizing the directors to act even in matters where they have dual interests, has the effect of exonerating the directors, at least in part, " from adverse inferences which might otherwise be drawn against them." (*Spiegel* v. *Beacon Participations, Inc.*, 297 Mass. 398, 417.) We may point out here also that if by reason of these loans Empire Power Corporation should sustain a loss, the loss would fall primarily upon these defendants as owners of the entire common stock. The proportion of stock of all classes owned by these defendants in Empire Power Corporation whose moneys they are claimed to have diverted wrongfully, is indeed, much greater than the proportion of the stock owned by them in Long Island Lighting Company, which received these moneys. The loans were not excessive in relation to the capital assets and the income of the borrower as shown in the borrower's balance sheet. The evidence demonstrates that the defendants acting as the directors of the Long Island Lighting Company borrowed moneys from Empire Power Corporation because in their opinion the loans promoted the interests of the borrower and the stockholders of the borrower; the evidence does not demonstrate that the defendants acting as directors of the Empire Power Corporation in loaning its moneys to Long Island Lighting Company did not decide upon sufficient grounds that the loans would also promote the interests of the lender and its stockholders.

The judgment should be affirmed, without costs.

DESMOND, J. (dissenting). At all the times of which we write, the individual defendants controlled both Long Island Lighting Company and Empire Power Corporation. In dealings between those corporations these individual defendants sat on both sides of the table. They caused Empire Power Corporation, from November, 1930, to February, 1933, to loan Long Island Lighting Company $5,330,000 on the latter's unsecured notes. These notes and various renewals thereof were all made for periods of less than a year. (See Public Service Law, § 69.) Interest has been paid

regularly but, up to the beginning of this action, nothing was ever paid on principal. The lighting company needed these moneys — and used them — to pay off, from time to time, notes held by banks which were asking for payment. In 1930, when Empire made its first loan to the lighting company, the latter owed the banks more than $10,000,000 and found it increasingly difficult to persuade the banks to accept renewals of their unsecured notes. The banks had suggested to the individual defendants that the lighting company discontinue paying cash dividends, so that it might accumulate in its treasury funds with which to pay off the bank loans. This the individual defendants, who owned or controlled half of the lighting company's common stock, were unwilling to do. An application to the Public Service Commission for authority to issue mortgage bonds to raise money to pay off the banks was pending but undetermined. There was only one other convenient source of funds. A lender had to be found who would supply, without security and without question, the cash needed from time to time to satisfy the banks. Such a lender was ready at hand in Empire Power Corporation, completely controlled by these individual defendants themselves.

During 1930 and 1932 these defendants arranged loans aggregating $4,500,000 from the power corporation to the lighting company, most, if not all, of the proceeds going to pay off the bank loans. In March, 1932, when the lighting company owed the power corporation about $4,500,000 and the banks about $8,750,000, an agreement was made between the lighting company and the banks whereby the latter accepted renewals of their notes for six months, and agreed to accept renewals for another six months if necessary, on condition that the lighting company make certain payments which were intended to come from, and did come from, Empire Power Corporation. It was part of this arrangement that the whole of the lighting company's debt to Empire Power Corporation should be postdated to that of the banks, postdated rather than subordinated because it was felt that subordination " would be openly subject to attack on account of the unity of interest between Empire Power and Long Island Lighting."

A little later Empire's directors passed a resolution agreeing on behalf of Empire " to extend and keep extended the time of

payment " of the lighting company's notes to Empire Power Corporation until the banks should be paid in full. An agreement to the same effect was made by defendant Phillips on behalf of Empire, in 1933, and approved by Empire's board of directors. Later that same year the Public Service Commission granted permission to the lighting company to sell the issue of bonds above referred to, but sale at the stipulated price was found to be impossible. Again the bank notes had to be renewed, and again Empire Power Corporation was caused to agree to subordinate its claims to those of the bank. Finally, in 1934, the authorized bond issue was sold by the lighting company under a contract which provided that the indebtedness to Empire Power Corporation would not be paid, discharged or secured by the issuance of any bonds of the lighting company secured by a lien prior to or on a parity with the lien of the bond issue. All of the proceeds of this bond issue went to the banks, none to Empire Power Corporation. In 1936 the lighting company paid off all its unsecured indebtedness, except that owing to Empire Power Corporation. Among the debtors so paid off were the common directors of the two corporations and their relatives and corporations controlled by them. Thus Empire Power Corporation, starting out with short term loans to the lighting company, ended up with what amounted to a " permanent investment " of $5,000,000 in the lighting company, in the form of unsecured notes, payment of which, if this suit fails, must await the pleasure of the defendants.

In this suit plaintiffs on behalf of Empire Power Corporation asked the court to compel Long Island Lighting Company to repay the moneys loaned to it by the Empire Corporation, to compel the individual defendants, as directors of Long Island Lighting Company, to pay that indebtedness if the lighting company does not, and to restrain the individual defendants from further extending the time of payment. Special Term found, as stated in its opinion, that the conduct of the individual defendants, in making and renewing these loans, was biased in favor of the lighting company, and ordered judgment for plaintiff. The Appellate Division reversed on the law and the facts and rendered final judgment dismissing the complaint. Contracts between two corporations having common officers are, of course, not void *per se* (*Burden* v. *Burden*,

159 N. Y. 287; *Continental Ins. Co. v. N. Y. & H. R. R. Co.*, 187 N. Y. 225), but are voidable by either corporation, irrespective of the balance of benefits (*Globe Woolen Co. v. Utica Gas & Elec. Co.*, 224 N. Y. 483; *Munson v. Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58), or by a court of equity at the instance of either corporation (or its stockholder), where it appears that such a contract was made in bad faith, fraud, other breach of trust or under circumstances preventing " an unprejudiced exercise of judgment." (*Sage v. Culver*, 147 N. Y. 241; *Farmers L. & T. Co. v. N. Y. & Northern Ry. Co.*, 150 N. Y. 410; *Kavanaugh v. Kavanaugh Knitting Co.*, 226 N. Y. 185; *Geddes v. Anaconda Copper Mining Co.*, 254 U. S. 590; *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U. S. 261, 264; *Koral v. Savory, Inc.*, 276 N. Y. 215.) A court will not attempt to pass upon questions of expediency or to control the corporate managers in the faithful exercise of their discretion. (*City Bank Farmers Trust Co. v. Hewitt Realty Co.*, 257 N. Y. 62; *United Copper Securities Co. v. Amalgamated Copper Co., supra; Burden v. Burden, supra.*) To make a case for the invalidation of such a contract there must be shown circumstances tending to prove that the contract was made in bad faith, fraud or other breach of trust, including a biased exercise of judgment. (*Globe Woolen Co. v. Utica Gas & Elec. Co., Sage v. Culver, United Copper Securities Co. v. Amalgamated Copper Co., Koral v. Savory, Inc., supra.*) Given such a showing, the burden is then upon those who would maintain the contract to establish its fairness (*Sage v. Culver, supra*), particularly when they themselves are shown to have exercised the dominating influence in effecting the contract. (*Geddes v. Anaconda Copper Mining Co., supra.*) Whether the particular contract between these two corporations having the same directors was or was not made under circumstances amounting to a breach of the directors' fiduciary duty, is a question of fact.

Here the individual defendants who arranged the loans by Empire Power Corporation to Long Island Lighting Company, were completely aware of the latter's financial difficulties at the times the loans and renewals were made. They and their families owned the majority of the lighting company's stock; they directed its policies and managed its affairs; some of them were unsecured creditors

of the lighting company in substantial amounts. It was to their interest, individually, that the lighting company's urgent need of funds to pay its unsecured and demanding bank creditors be met. They met it by loaning Empire's money to Long Island on such terms that Empire's capital funds were used to pay off Long Island's bank loans in part, then these loans were made subordinate to the balances owing to the banks and finally remained wholly unpaid when all Long Island's other creditors of the same class were taken care of by the proceeds of a bond issue. The inference is unescapable that in the making of these loans, and renewals, the welfare of Empire Power Corporation was ignored and that the purpose of defendants was to benefit Long Island Lighting Company, and themselves. It is no answer to all this that Empire's financial structure may have resilience enough to absorb the risk or the damage of the loans, or that the individual defendant's stake in Empire is large and the plaintiff's small. Plain disclosure of the inequity of the situation and of the unfairness of the risk to the Empire Corporation, makes a strong appeal to the conscience of the court. It is not answered by defendants' protestations that Empire has a good investment in these loans, that they would surely be paid on a liquidation of the lighting company, that the lighting company's credit is good, etc., or by the provision in Empire Power Corporation's charter concerning contracts between that corporation and other corporations with the same officers or directors.

A court of equity in such a case as this does not stand aside and await the outcome of defendants' conduct. It acts promptly and effectively. It sets the whole transaction aside without waiting, or compelling minority stockholders to wait, to see whether those who unlawfully put a corporation's property at risk, may possibly at some undertermined time, have the skill, or luck, to get it back intact for the corporation.

The judgment of the Appellate Division should be reversed and that of the Special Term reinstated, with costs.

LOUGHRAN, LEWIS and CONWAY, JJ., concur with LEHMAN, Ch. J.; DESMOND, J., dissents in opinion in which FINCH and RIPPEY, JJ., concur.

Judgment affirmed.