## PICCARD v. SPERRY CORPORATION et al.

District Court, S. D. New York.

Jan. 11, 1943.

466

See, also, 36 F.Supp. 1006.

A. Joseph Geist, of New York City (George E. Netter, Karl Leibel, and Mortimer A. Shapiro, all of New York City, of counsel), for plaintiff.

Szold & Brandwen, of New York City (Robert Szold and Charles J. Tanenbaum, both of New York City, of counsel), for intervening plaintiff Rosalie J. Leventritt.

Bijur & Herts, of New York City (Harry Bijur and Harold Herts, both of New York City, of counsel), for intervening plaintiff Frederick W. Scholem.

Harper & Matthews, of New York City (Albert C. Rothwell and Cornelius D. Crowley, Jr., both of New York City, of counsel), for defendant, Sperry Corporation.

Humes, Buck, Smith & Stowell, of New York City, for defendant George N. Armsby.

Chadbourne, Hunt, Jaeckel & Brown, of New York City (Ralph P. Buell and William H. Hall, both of New York City, of counsel), for defendants Standard Capital Co; and J. Cheever Cowdin.

George Z. Medalie and Louis Haimoff, both of New York City, for defendants Thomas A. Morgan and others.

Skutch, Meyer & Burton, of New York City (Ira Skutch and Harold Schwarzberg, both of New York City, of counsel), for defendant Edward Allen Pierce.

DeBevoise, Stevenson, Plimpton & Page, of New York City (E. W. DeBevoise, of New York City, of counsel), for defendant Alexander B. Royce.

Sullivan & Cromwell, of New York City (Inzer B. Wyatt, of New York City, of counsel), for defendant J. Russell Forgan and others.

RIFKIND, District Judge.

The action is a derivative stockholders' suit brought by minority stockholders of the Sperry Corporation against directors of that corporation and others.

The evidence establishes conclusively that in the Spring of 1936, a controversy, attended by considerable bitterness, developed between the Sperry Corporation on the one side and Cowdin and Standard Capital Company on the other. The Sperry Corporation demanded of Cowdin and Standard Capital Company $193,000 which the latter had received from Field Glore and Company as a 50% participation in the profits realized by Field Glore and Company out of an agreement between the Sperry Corporation and Field Glore and Company which Cowdin had negotiated on behalf of Sperry Corporation at a time when Cowdin was a director and employee of the Sperry Corporation and president and

principal stockholder of Standard Capital Company.

In this controversy there was a central issue of fact: Had Cowdin made a sufficient disclosure of his arrangement with Field Glore and Company at the meeting of the Sperry board of directors which authorized the agreement with Field Glore. That issue has now been tried and I have resolved it against Cowdin. In the Spring of 1936, it had not yet been tried; and no one could then prophesy with certainty how such an issue would be resolved. In any event, the dispute led to negotiations which were fruitful in producing a settlement agreement. In accordance with its terms Cowdin and Standard Capital paid Sperry $101,407.05 and received from Sperry a release of its claim.

■ At least as against Cowdin and Standard Capital, plaintiffs cannot prevail until they first succeed in striking down this release. To accomplish this, they have two avenues of attack, of which one is to challenge the bona fides of the settlement. This alone fails them, however, for I find the transaction was attended, on the part of the directors, by good faith, sound business judgment and prudent solicitude for the welfare of the corporation. The mere fact that this was a transaction between the corporation and one of its directors does not avail to rob the release of its effectiveness. This principle would be true whether the applicable law was that of New York, where the transaction occurred, or that of Delaware, where the Sperry Corporation was incorporated. Crawford v. Mexican Petroleum Co., 2 Cir., 1942, 130 F.2d 359.

To the extent that Munson v. Syracuse, C. & C. R. Co., 1886, 103 N.Y. 58, 8 N.E. 855, may be said to impose a more rigid standard, it yields to the more moderate view expressed by both prevailing and dissenting opinions in Everett v. Phillips, 1942, 288 N.Y. 227, 43 N.E.2d 18.

The second avenue of attack open to plaintiffs raises questions not so readily answered. Plaintiffs challenge the release, asserting in substance that it is not the act or deed of the corporation, its execution and delivery never having been validly authorized by the board of directors. The issue thus tendered requires analysis of the proceedings taken at two meetings of Sperry's board of directors: the meeting of June 30, 1936, at which the settlement was authorized and the meeting of July

28, 1936, at which it was approved or ratified.

The board consisted of eight members and the by-laws specified that a majority constituted a quorum. At the June 30th meeting the following directors were present: Morgan, Sanderson, Pierce, Royce, Doe and Cowdin. Cowdin retired from the meeting before the consideration of the settlement. Only five directors remained and if anyone of them was ineligible to be counted towards a quorum, no quorum was present.

Plaintiffs deny the disinterestedness of all the directors on the ground that all were subject to liability for negligently entering into the Field Glore contract. Since I have found that no negligence attended the making of that contract this argument of necessity fails.

More specifically, plaintiffs assert the ineligibility of Morgan and Sanderson, the former on the ground that he was, at the time, a stockholder of Standard Capital, and the latter on the ground that his wife was at the time a stockholder of the same corporation. Since the disqualification of Morgan alone would suffice to invalidate the proceedings taken at the meeting, consideration of Sanderson's status may be deferred.

At the time of the meeting, Morgan was the owner of 50 shares of common and 50 shares of preferred of the stock of Standard Capital for which he had paid $5,050. Standard Capital had outstanding at the time 10,555 shares of common stock and 4750 shares of preferred stock. The charter of Sperry contained not only the usual provisions authorizing transactions in which a director is personally interested but a provision specifically addressed to the present problem: "Any director whose interest in any such contract or transaction arises solely by reason of the fact that he is a stockholder, officer or creditor of such other company * * * shall not be deemed interested in such contract or other transaction under any of the provisions of this paragraph, nor shall any such contract or transaction be void or voidable, nor shall any director be liable to account because of such interest nor need such interest be disclosed". Moreover this quoted language is preceded by the sentence, "Directors so interested may be counted when present at meetings of the Board of Directors or of such Committee for the purpose of determining the

468

existence of a quorum". The charter, therefore, not only declares that Morgan might be counted towards a quorum if interested but also that mere stock ownership does not make him an interested director. If this charter provision is valid, then Morgan, and a fortiori Sanderson, could properly be counted towards a quorum.

The Delaware Corporation Law provides that "The Certificate of Incorporation may also contain any provision which the incorporators may choose to insert for the management of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders * * * provided, such provisions are not contrary to the laws of this State". Section 5, subdivision 8, Delaware Revised Code, Section 2037.

■ The statute law of Delaware contains no express prohibition of the provision in question. However, it would unduly narrow the scope of the proviso if the word "laws" were confined to statute law. See State ex rel. Cochran v. Penn-Beaver Oil Co., 1926, 4 W.W.Harr. 81, 34 Del. 81, 143 A. 257.

Extensive search by counsel and court has failed to reveal any precedent directly in point. While a number of cases have considered the eligibility of an interested director to be counted towards a quorum, in none of them was the court confronted by such a provision as is here under review. Generally, the authorities are divided as to whether a director's interest renders him ineligible for quorum purposes. Opposed to eligibility are: Butts v. Wood, 1867, 37 N.Y. 317; In re Lone Star Shipbuilding Co., 2 Cir., 1925, 6 F.2d 192, 195; See Sturndorf v. Samurai Co., 1910, Sup., 121 N.Y.S. 217; Enright v. Heckscher, 2 Cir., 1917, 240 F. 863; In re Webster Loose Leaf Filing Co., D.C.N.J. 1916, 240 F. 779; Wishon-Watson Co. v. Commissioner of Internal Revenue, 9 Cir., 1933, 66 F.2d 52; Sacajawea Lumber &

Shingle Co. v. Skookum Lumber Co., 1921, 116 Wash. 75, 198 P. 1112.

In favor of eligibility are: Gumaer v. Cripple Creek Tunnel T. & M. Co., 1907, 40 Colo. 1, 90 P. 81, 13 Ann.Cas. 781, 122 Am.St.Rep. 1024; Buell v. Buckingham, 1864, 16 Iowa 284, 85 Am.Dec. 516.

In the Enright case, supra, the Court of Appeals of this Circuit recognized this division of opinion and said [240 F. 872]: "A director, whose interest in a matter disqualifies him from voting upon a resolution concerning it, cannot, according to the better opinion, be counted for the purpose of ascertaining whether a quorum was present when the vote is taken".

It should be noted that in that case the interested director was not present at the challenged meeting and that the court's comment on the quorum rule was not necessary to its decision.

■ The Delaware courts have not yet expressed themselves on the question of eligibility for a quorum. However, in Italo-Petroleum Corporation v. Hannigan, 1940, 1 Terry 534, 40 Del. 534, 14 A.2d 401, the court declared that the *vote* of an interested director could not be counted to make a majority of the board. That, too, was dictum since the court found that the facts if proved would establish a void, not a voidable, transaction [1]. Such a transaction could not withstand attack regardless of the character of the board.

Reference may properly be had, too, to cases where the question of quorum was not considered despite the manifest absence of a quorum if the governing rule is that an interested director is ineligible for quorum purposes. One such case is Everett v. Phillips, 1942, 288 N.Y. 227, 43 N.E.2d 18. No disinterested quorum could possibly have been assembled in that case. The court, however, did not dispose of the issues on that simple ground. It did not mention the question. Instead, it examined into the good faith of the transaction and refused to upset it in the absence of proof of mala fides. Furthermore, the court construed the charter of the corporation [2] for

---

[1] The words "void" and "voidable," used in describing corporate transactions have led to some confusion because of the different meanings assigned to them in varying contexts. In minority stockholders' suits these words are useful abbreviations when employed to distinguish between transactions which can be validated by less than all the stockholders and

transactions which cannot. In the case at bar, plaintiffs have conceded that the transaction could have been ratified and approved by a majority vote of the stockholders.

[2] I have been unable to find in the quoted provisions of the charter the authority which the court of appeals mentioned.

whose benefit the suit was brought, as authorizing interested directors to *act*; and not only failed to find in such a provision anything repugnant to public policy but, on the contrary, used that provision to buttress its conclusions. See, also, Spiegel v. Beacon Participations, Inc., 1937, *297* Mass. 398, 8 N.E.2d 895; Crawford v. Mexican Petroleum Co., supra.

■ The function of this Court is not to determine whether *in its judgment* the challenged provision of the Sperry charter violates some general public policy but whether Delaware regards its public policy violated by such a provision.

■■ When we consider that there is at least some authority which recognizes an interested director's eligibility for quorum purposes even in the absence of charter provisions expressly sanctioning such eligibility; (though it is the minority view and *not the "better opinion"*); that the Delaware courts have so far failed to condemn such a provision; that the New York courts have apparently sanctioned such a provision, then it seems to me a federal court should not assume that Delaware forbids stockholders to contract to make the rule sanctioned by the minority view prevail in the internal government of their corporation. Plaintiffs have, therefore, failed to establish the invalidity of the clause in question and the proceedings taken at the meeting of June 30th must be deemed to be the valid act of the corporation.

■ At the meeting of July 28, 1936, the following directors were present and voted to approve and ratify the settlement: Doe, Hopkins, Morgan, Pierce, Royce and Sanderson. The following were present but refrained from voting: Cowdin, Armsby. If the conclusion with respect to the meeting of June 30th is correct, then there was clearly a proper quorum at this meeting. But even if a different result were reached concerning the earlier meeting, the meeting of July 28th would nevertheless stand unless Sanderson were deemed disqualified by reason of his wife's stock ownership in Standard Capital. The evidence does not suggest that Sanderson was the beneficial owner of his wife's stock. No one testified that Sanderson

held the stock in his wife's name or that it was bought with Sanderson's funds. It appears that Sanderson's only connection with his wife's investment in the stock was that, at Cowdin's invitation, he suggested the stock to his wife. Sanderson's conduct, when he learned of the payment by Field Glore to Standard Capital, was prompt, vigorous and unequivocal in favor of Sperry. The evidence does not support the contention that he was an interested director.

■ It has been suggested that Royce was an interested director because he expected compensation for his services as attorney in negotiating and arranging the settlement and that Doe was likewise interested because he was an employee of the corporation and participant in 'a bonus plan under which his compensation was subject to the determination of his fellow directors. If such circumstances disqualify a director the personnel of a great many, if not most, American corporations would have to be reconstituted. That would not necessarily be calamitous. However, the widespread practice of having corporate attorneys and employees on boards of directors does indicate a fairly universal acceptance by the bar of the proposition that such relationships do not disqualify.

■ It follows that the release given by the corporation to Cowdin and Standard Capital is valid and that the claim has been properly and completely discharged.

Fortunately it is no longer necessary to cite authority for the proposition that Cowdin's conduct constituted a breach of fiduciary duty, was wrongful and actionable. It is not to the discredit of the defendant directors that they did not wait for the prod of minority stockholders but vigorously asserted the corporation's claim against their fellow director and obtained a settlement which, in view of the difficult issue of fact and the uncertainty attending all litigation, is fair.

The other aspects of the case require no elaboration. They are disposed of in the court's findings of fact and conclusions of law.

The complaint is dismissed.