Pecora, J.
This is an application to confirm the report of a referee and to approve an offer of settlement made in the above action.
*1046 In 1946 and 1947, nine derivative actions were brought in this court by various stockholders of the Twentieth Century-Fox Film Corporation (hereinafter referred to as “ Fox ”) against that corporation, and also against the National Theatres Corporation (hereinafter referred to as “ National ”), which is a wholly-owned subsidiary of Fox. These corporations are nominal defendants and the actions were brought in their right and behalf. The adversary defendants, who were either served or have appeared, are fifteen individuals; most of them were officers or directors of Fox and National; four of them were so-called managers, each in charge of a theatre circuit subsidiary of National.
Six similar actions were also instituted against the same defendants in the United States District Court, Southern District of New York.
The nine actions in this court were consolidated by an order dated May 22, 1947, and an attorney for the plaintiffs in one of the actions was appointed general counsel for the plaintiffs in such consolidated action.
The six actions brought in the Federal Court were likewise consolidated by an order of that court dated April 9,1947, which order appointed the same attorney as general counsel for the plaintiffs therein (that consolidated action is known as Levin v. Skouras, et al. — Clerk’s Number Civil 38-422).
A seventh action was later commenced in the Federal Court, but it was stayed pending the outcome of the two consolidated actions. In addition, the trial of the consolidated action in the Federal Court was postponed to await the determination of the consolidated action'in this court.
A consolidated complaint was served which embodied substantially all the allegations of the various complaints in the actions which were consolidated.
This complaint contains four separate causes of action. The consolidated answers interposed in behalf of the defendants not only deny the material allegations of the complaint, but also assert certain special defenses to each cause of action. As the pleadings are fully discussed in the referee’s report, to which reference will presently be made, I do not deem it necessary to dwell upon them, except to observe that the complaint charges the individual defendants with divers acts of corporate mismanagement and violations of their duties as fiduciaries.
After joinder of issue, discovery proceedings were brought in the Federal Court by the general counsel for plaintiffs. He also conducted searching examinations before trial of several of the *1047 defendants. The evidence thus adduced comprised over 1,500 pages of testimony and included about 500 exhibits marked for identification out of several thousand that were inspected. Considerable data were thereby obtained which seemed to furnish some support for certain of the allegations of the complaint.
When the trial of this consolidated action came on before this court, a written offer of settlement was made on behalf of certain of the individual defendants, notwithstanding their continued protestations that their corporate acts were such as could not subject them to liability. This offer was the product of long negotiations and conferences between counsel for the contending parties.
The terms of the offer embody, in the main, the relinquishment by the defendants Rhoden, Ricketson, Fitzgerald and Charles P. Slcouras (the four theatre circuit managers above referred to), of claims for percentage compensation aggregating not less than $1,750,000, due them from National and its theatre circuit subsidiaries, under employment contracts made with those managers ; and also an amendment of the employment contract with Charles P. Skouras in such a manner as to effect a saving to National during a seven-year period commencing in 1948, of the estimated sum of another $1,750,000. Other provisions are contained in the offer, but the foregoing are the ones which would create the greatest benefits for Fox and National.
An application for the approval of the offer was duly made before this court. This led to the issuance of an order on June 24, 1948, directing Fox to mail within five days, to each of its stockholders of record, a notice that a hearing would be held before this court on August 3,1948, on thé proposed settlement. This direction was complied with. Bach notice was accompanied by a statement of the issues involved in these actions and a copy of the offer of settlement.
On the return day, counsel representing all the parties attended and indicated their approval of the offer. There also appeared various counsel representing 9 stockholders owning an aggregate of 658% shares, who opposed the proposed settlement as being inadequate. The total issued and outstanding stock of Fox exceeded 2,500,000 shares, held by over 27,000 stockholders. Thus the proportion appearing in opposition to the proposed settlement was practically infinitesimal.
This court, however, recognizing that lethargy, indifference or ignorance may have caused many stockholders to refrain from an expression of opinion upon the offer, heard the objectants at *1048 length and received evidence and briefs from them in support of their objections.
The objections of stockholders in proceedings of this character should not lightly be swept aside merely because they are advanced by a comparatively insignificant number. Elementary justice requires, rather, that they be fully considered on their intrinsic merits. Hence, this court felt constrained, from the nature of the objections, to order a reference to examine the voluminous record theretofore developed; to receive such additional proofs as might be deemed necessary or desirable with respect to the offer; and to report thereon with his recommendations to this court.
For a period of about three months, the learned referee held hearings, during which over 800 pages of testimony and many exhibits were received. He also heard arguments of counsel at length and studied their carefully prepared briefs. His report, filed on February 14, 1949, is now before this court. Its confirmation has been moved by all the attorneys representing plaintiffs and defendants. The motion is opposed by attorneys representing some of the original objectants to the offer.
The hearing of the motion was a protracted one. The proofs and arguments submitted to the referee were adverted to in detail, and additional briefs were submitted. They have all received careful attention.
The referee’s report consists of 148 printed pages. It contains a thorough exposition of the pleadings. It minutely analyzes the evidence and poses the respective contentions of counsel in respect thereto. It includes a scholarly statement of the legal principles governing the disposition of all the questions presented. All the counsel in this consolidated action, as well as those representing the objectants, united in praising the obviously comprehensive and painstaking quality of the report, and the scrupulous fairness with which the referee discharged his onerous duties — although, of course, the objectants disagree with his recommendations. The recommendations of the learned referee may be summarized in the concluding words of his report, as follows: “I have the firm conviction .that the terms of the offer of settlement are inherently fair and reasonable under the circumstances, and I, therefore, recommend that the proposed settlement be approved.”
As the referee has elaborately pointed out, the benefits, both present and prospective, which would accrue to the defendant corporations, are of substantial value.
*1049 I am mindful of the fact that the damages claimed and sought to be recovered herein considerably exceed the monetary value of these benefits. At the same time, it should be noted that the defenses which have been pleaded are urged with plausibility and impressiveness. The settlement of litigation, however, inevitably calls for mutual concession and forbearance.
I am also aware of the proverbial hazards and uncertainties of litigation. In actions of this nature, the obstacles which plaintiffs must overcome before establishing their right to a judgment, are peculiarly difficult. Indeed, the paeans of triumph sung as a result of victory won upon the trial, not infrequently, are converted into dirges of defeat when the suit finally emerges from the reviewing courts. Two typical examples are to be found in the cases of Hauben v. Morris (161 Misc. 174, revd. 255 App. Div. 35, affd. 281 N. Y. 652) and Everett v. Phillips (22 N. Y. S. 2d 852, revd. 261 App. Div. 3082, affd. 288 N. Y. 227).
Upon applications of this character, it is the duty of the court to determine whether the proposed settlement was induced by fraud, chicanery or collusion, and whether it is fair and reasonable under all the surrounding circumstances. This necessitates the exploration of all the legal and factual issues involved, to the end that the prospects of achieving ultimate success may be balanced against those of encountering ultimate failure (Winkelman v. General Motors Corp., 48 F. Supp. 490).
I have made such an exploration in this case, in the process of which the entire record has been surveyed. In so doing I have been materially aided by the conscientious labors of the referee, which are brilliantly reflected in his masterly report, and which have evoked laudations from all the attorneys who appeared before him.
The inexorable conclusion therefrom is that the proposed settlement is fair and reasonable, and that the best interests of all the stockholders will be far better served by its approval than by its rejection.
The motion to confirm the referee’s report and its recommendations is therefore granted, and the offer of settlement is approved.
Upon the settlement of the order to be entered hereon, the court will pass upon all requests for allowances. Such requests should be accompanied by affidavits setting forth the services rendered respectively by those seeking allowances.
Settle also the judgment to be entered in this action in accordance with the above-mentioned offer of settlement.