JOSEPH S. WOHL, Appellant, v. BENJAMIN MILLER et al., Respondents.

First Department, December 17, 1957.

*Simon H. Rifkind* of counsel (*Jay H. Topkis* and *Joseph Katz* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellant.

*Mortimer Hays* of counsel (*Mortimer Feuer, Martin Mensch* and *Joseph A. Doran* with him on the brief; *Hays, Podell, Algase, Crum & Feuer,* attorneys), for respondents.

McNALLY, J. Plaintiff appeals from an order granting summary judgment in favor of the defendants. The complaint herein alleges three claims as bases for the relief sought by the plaintiff individually and in behalf of the defendant, Perma Realty Corp. They are: (1) The original issue of 90 shares of stock of Perma to Elias A. Cohen, now deceased, was in consideration of his undertaking, evidenced by writing dated September 2, 1949, whereby he was to " provide " the funds needed to close the Forma transaction; Cohen failed to " provide " the needed funds, thereby losing his rights to said stock, and the defendants, Miller, acquired the stock with knowledge of the said agreement and its prior breach. (2) The defendants, Miller, caused funds of Perma to be made available to corporations controlled by them in the form of loans, without interest or security, or any other advantage to Perma. (3) The defendants, Miller, acquired in the name of the defendant, One Estate Inc., from the Cohen estate 40 shares of stock of Perma at less than their fair value by causing Perma to settle questionable claims advanced against it by the Cohen estate.

The agreement of September 2, 1949 between plaintiff and Cohen, related, in part, to " various properties being acquired by the purchase of the 100 per cent of the stock of the Forma Realty Corporation." Towards that end plaintiff agreed to procure a third-party loan of $250,000 for the period of six months from September 6, 1949, bearing the annual interest rate of 6%, subject to the payment of a service charge of $10,000 and a legal fee of $250, and secured by the entire issue of stock of Marold Realty Corp., owned in equal shares by plaintiff and Cohen. If closing of title to the Forma stock was adjourned on November 11, 1949, plaintiff undertook to procure an additional loan of $50,000 to Perma upon " Cohen giving  *  *  * adequate and proper and acceptable security as collateral." Cohen also agreed " to provide whatever funds may be necessary ". In the event the Forma transactions did not close, then the $250,000 loan was to be repaid immediately. For his services, plaintiff was to receive 10% of the Perma stock; in addition, Cohen, by said agreement, granted to plaintiff an option

to purchase his 50% interest in Marold Realty Corp., at $250,000. Cohen was to receive 90% of the Perma stock.

The first meeting of the subscribers and incorporators of Perma was held on August 22, 1949. The certificate of incorporation had been filed August 18, 1949. It was then resolved that the stock be issued at $1 per share. The first meeting of directors of Perma was held the same day. Cohen was then elected president. The original directors resigned and the elected officials were elected directors in their place. The attorney for Perma reported at the directors' meeting "that negotiations had been had by Perma Realty Corp. looking towards the purchase by it of the stock of Forma Corporation from its stockholders, and that these negotiations were ready to be consummated and papers drawn by the stockholders for the sale of their stock." The following resolution was then adopted: "It was unanimously voted that the President of Perma Realty Corp. be authorized in its behalf to execute any and all papers in connection with the consummation and closing of that matter and that the moneys required to consummate and close be borrowed by Perma Realty Corp. or the matter otherwise handled by it as its president shall see fit and proper."

The original issue of the Perma stock was dated September 6, 1949 and receipted for on September 16, 1949; 10 shares were issued to plaintiff, and 90 shares to Cohen. On September 6, 1949 Marilyn Tabman, as secretary of Perma, issued her certificate stating that on August 22, 1949 the board of directors of the corporation had unanimously resolved as follows: " ' Elias A. Cohen, President of Perma Realty Corp. be authorized in its behalf to execute any and all papers in connection with the purchase of the stock of Forma Corporation, from its stockholders; and that the moneys required to consummate and close said transaction be borrowed by Perma Realty Corp., or the matter otherwise handled by it as the said President, Elias A. Cohen, shall see fit and proper.' "

Marilyn Tabman was plaintiff's nominee. In the light of the agreement of September 2, 1949 between plaintiff and Cohen, the minutes of the first meeting of directors of Perma were amended to reflect the election of Marilyn Tabman as an additional director and secretary of Perma.

On September 7, 1949 a written agreement was made between the administrator of the estate of Jacob Ruppert and Perma for the acquisition of 300 shares of capital stock of Forma for the sum of $1,267,500, representing $4,225 per share. The agreement provided for additional premium payments contingent

upon the date of closing and other factors not here material. The total outstanding shares of Forma on September 7, 1949 was 1,000. Closing of the sale was contingent upon the successful acquisition by Perma of all the outstanding shares of stock of Forma; the agreement recites concurrent purchase agreements with all other Forma stockholders. Said agreement was signed by Cohen as president of Perma and he personally guaranteed its performance on the part of Perma.

On March 29, 1950 the acquisition of the shares of stock of Forma by Perma was accomplished. The total sum paid therefor was $4,354,019.65, inclusive of adjustments, of which $1,350,000 was paid in cash and the balance by the application of the proceeds of sales and loans in respect of the assets of Forma. On the date of closing, March 29, 1950, an agreement was made among Perma, the defendants, Miller and Cohen whereby Cohen sold 50 shares of Perma to the defendants, Miller. The nominal consideration therefor was $500. The defendants, Miller, thereby agreed to and did advance $575,000 to Perma which was applied towards the purchase of the Forma stock. Perma's debts to Cohen were subordinated to Perma's obligation to the defendants, Miller. Provision was therein made for representation of the defendants, Miller, on the board of directors of Perma. Payment of the said loan was secured by provision for delivery of the Forma stock to the defendants, Miller, after Perma's acquisition thereof, delivery to the defendants, Miller, of all corporate records of Perma and Forma, and the execution of a mortgage on 270 Madison Avenue, owned by Forma.

Elias A. Cohen died July 2, 1952. During October, 1952 the executors of his estate brought an action in behalf of the estate and Perma charging the defendants, Miller, with bad faith in causing Perma to refrain from paying various debts owing by it and, in addition, for an accounting in respect of funds and property of Perma utilized by the defendants, Miller, for their own purposes. This action terminated in an agreement made on February 15, 1953 whereby the alleged indebtedness owing to various corporations owned or controlled by the Cohen estate was liquidated in the sum of $420,009.11, against which an offset of $73,550, sums owing to Perma, was made, and provision made for the payment of the balance of $346,459.11 as follows: cash, $42,459.11, and the balance by a note in the sum of $304,000, payable in 60 equal quarter-annual installments of $4,600, until March 1, 1968, when the balance of $32,600 was to be paid, without interest, secured by a mortgage on 270 Madison Avenue, property of Perma. Concurrently, and by separate instrument,

the Cohen estate sold to One Estate Inc., a corporation controlled by the defendants, Miller, 40 shares of the Perma stock for the sum of $160,000, payable in installments over 15 years, without interest.

The purchase price of the Forma stock and the terms of the agreements for the acquisition thereof are not challenged. Nor is it suggested in the complaint or plaintiff's answering affidavit that the various dispositions made in respect of the assets of Forma prior to the closing of title on March 29, 1950 were improvident or disproportionate to the fair values thereof. If it be assumed that the purchase price of the Forma stock was satisfactory to plaintiff, and it is not suggested otherwise, then the utilization of the proceeds of Forma assets sold or pledged at prices consistent with their fair value presents solely a question involving the judgment of Cohen, an officer and director of Perma. There is no evidence that Cohen erred in his judgment as applied to the transactions relating to the assets of Forma. Consequently, they do not afford a basis for relief in behalf of Perma. (*Everett* v. *Phillips,* 288 N. Y. 227, 232.)

The agreement of September 2, 1949 fails to supply any basis for relief either to Perma or the plaintiff. The portion of the agreement relied on by plaintiff is: '' It being understood that Cohen will make every effort * * * to provide whatever funds may be necessary ''. Plaintiff's reply brief argues '' Cohen was obligated either to invest, lend or cause the lending of the necessary funds.'' Plaintiff's argument merely introduces logomachies, involving imperceptible nuances in meaning, wholly foreign to the stark, unadorned realities. Nothing can be clearer than that neither plaintiff nor Cohen contemplated making substantial investment in the acquisition of Forma and its property, and that it was their purpose to secure the necessary funds through the means of loans, preferably third-party loans. The minutes of the first meeting of the board of directors of Perma held August 22, 1949, subsequently ratified by plaintiff's nominee, Marilyn Tabman, evidence that Cohen was unanimously authorized '' in its behalf to execute any and all papers in connection with the consummation and closing of that matter and that the moneys required to consummate and close be borrowed by Perma Realty Corp. or the matter otherwise handled by it as its president shall see fit and proper.'' The certificate of Marilyn Tabman, as secretary of Perma, dated September 6, 1949, reiterates verbatim the said authority of Cohen. In explanation of the broad authority evidenced by said resolution and certificate, plaintiff suggests that it is to be limited to the loan procured by plaintiff and

evidence by the agreement of September 2, 1949. The difficulty with this contention is that it is without factual support and its bald assertion may not serve to delimit the comprehensive authority granted to Cohen by the board of directors of Perma. Many of the transactions of Forma resulting in the liquidation or pledging of its assets were matters of record before the stock purchase was consummated. Plaintiff, prior to the commencement of this action, did not challenge any of said transactions.

We, therefore, conclude that Cohen did not violate the agreement of September 2, 1949 in causing Forma to sell or pledge its assets prior to March 29, 1950 and causing the application of the proceeds resulting therefrom to the payment of the sales price of the Forma stock sold to Perma. Therefrom, we also conclude there was no failure of consideration in respect of the 90 shares of stock of Perma issued to Cohen.

Insofar as the second cause of action is grounded on the failure of the defendants, in the light of the agreement of September 2, 1949, to elect plaintiff a member of the board of directors of Perma, we hold that the record demonstrates that the agreement in that respect was complied with by the election of plaintiff's nominee, Marilyn Tabman, as director of Perma. Her subsequent resignation as director did not involve a breach of said agreement. The second cause of action is otherwise also without merit for the reasons heretofore stated.

The plaintiff's claim grounded on the loans made by Perma to various corporations controlled by the defendants, Miller, arises from the following circumstances. The advance made by the said defendants to Perma on March 29, 1950, in the sum of $575,000, was in the form of payments made by the defendant, Benjamin Miller, and his corporation, Syndicate Building Corp., aggregating said sum. At the end of 1950, said loan was reduced to $261,500; at the end of 1951 it was reduced to $226,000. Thereafter, substantial sums were paid by Perma to various corporations controlled by the Millers, aggregating $330,000, which, on the books of Perma, initially were carried as loans to said corporations, and subsequently entered on the books of Perma as payments on account of the loan made to Perma on March 29, 1950. Defendants argue there is now due a balance of $92,000 on said loan, and that the end effect of the payments made by Perma was to reduce the said liability of Perma, hence the payments do not constitute a basis for relief. The plaintiff, on the other hand, argues the transactions represent loans made without interest, security or advantage to Perma.

In regard to the settlement made with the Cohen estate and concurrent sale of 40 shares of stock of Perma by the Cohen estate to One Estate Inc., plaintiff avers it represents the disposition of a questionable liability on the part of Perma motivated, in part, by the sale of the said stock to a Miller corporation at a price considerably less than their fair value. In addition to other circumstances, plaintiff adverts to the letter dated February 19, 1953, four days after the said settlement and sale, addressed to him by Perma, and signed by defendant, Benjamin Miller, as secretary, and the absence therein of any reference to the concurrent sale of the stock to a Miller entity, and argues that it evidences willful concealment of a material fact and demonstrates a motive alien to the good faith required to be exercised in respect of the plaintiff in the circumstances here involved.

On a motion for summary judgment, the court is enabled to search the record for issues; if they are present, their resolution must await a trial. (*Sillman* v. *Twentieth Century-Fox Film Corp.*, 3 N Y 2d 395, 404.) It is well settled that the relation of directors to stockholders is akin to that of trustee and *cestui que trust* requiring the fairness, morality and honesty imposed on fiduciaries. (*Sage* v. *Culver,* 147 N. Y. 241, 247; *Bosworth* v. *Allen,* 168 N. Y. 157; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185, 193; *Haberman* v. *New York Ambassador,* 272 App. Div. 375.) When the transactions challenged involve the individual property interests of the directors and officials of a corporation and they assume to act for the corporation therein, they are required to explain the transactions fully and show that no undue advantage has been taken of their positions to their own advantage or to the advantage of corporations in which they are interested. (*Sage* v. *Culver, supra,* p. 247.) The documentary evidence adduced by the defendents, under all of the circumstances here present, does not negative beyond question the allegations of wrongdoing in respect of the alleged loans the defendants caused Perma to make to the Miller corporations and, similarly, does not negative the allegations of wrongdoing in regard to the settlement with the Cohen estate and the acquisition by the defendant, One Estate Inc., of 40 shares of Perma. (*Levine* v. *Behn,* 282 N. Y. 120, 125.)

A motion for summary judgment under rule 113 of the Rules of Civil Practice invites the application of rule 114 of the Rules of Civil Practice which provides, in part: "If it appear that a motion to dismiss a complaint under Rule 113 applies only to one or more of several causes of action or to one or more of

several parties plaintiff or defendant, and that defendant's contentions are sufficient to dispose of the claims of the complaint in such part, the defendant may have final judgment forthwith dismissing the complaint to the extent warranted, on such terms as may be just and the action may be severed." Partial summary judgment may be addressed to a claim constituting a severable part of a single cause of action. (*Fleder* v. *Itkin,* 294 N. Y. 77, 84, citing with approval *Sheehan* v. *Cone Gen. Adv. Agency,* 176 Misc. 882, 884; *Gans* v. *Hearst,* 173 Misc. 662, 665, affd. 259 App. Div. 861; *Clayton* v. *Farish,* 191 Misc. 136, 161.)

There is no discernible issue in respect of plaintiff's claim that the decedent Cohen failed to provide funds to close the Forma transaction in accordance with the agreement dated September 2, 1949, and there is no issue in regard to the second cause of action. Therefore, the order appealed from should be modified to the extent of limiting the dismissal to the said claim of the plaintiff and the second cause of action, and otherwise severing and continuing the first cause of action, and, as so modified, affirmed, without prejudice to a renewal of the motion, if defendants be so advised, upon completion of all pretrial proceedings, with costs to the appellant.

BREITEL, J. P., RABIN, BERGAN and BASTOW, JJ., concur.

Order modified to the extent of limiting the dismissal to the said claim of the plaintiff and the second cause of action, and otherwise severing and continuing the first cause of action, and, as so modified, affirmed, without prejudice to a renewal of the motion, if defendants be so advised, upon completion of all pretrial proceedings, with costs to the appellant. Settle order. [See *post,* p. 823.]